## LOWE and PATTISON *v.* NELSON, BRADLEY & Co.

This action was brought to recover damages from the vendor of cotton, on the ground that when the bales were opened, it was discovered that the cotton was "country damaged." *Held*: It is indispensable for the plaintiffs' action, that they should prove the existence of the damage at the date of the sale, and should show the extent of that damage with such reasonable certainty as to enable the court to assess the just reduction of price. The burden is on the plaintiffs to make the facts reasonably clear and certain.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *A. N. Ogden*, for plaintiffs. *Benjamin* and *Micou*, for defendants. By the court:

SLIDELL, J. The plaintiffs bought of the defendants, at New Orleans, twelve hundred and five bales of cotton, for which they paid the sum of $29,343 41. The sale was made in the month of August. It was shipped, in that month, to Glasgow, and upon examination by two brokers there, after landing, they gave a certificate that nine hundred and sixty-eight bales were "country damaged," and two hundred and eighteen were in so bad a state that, to make them merchantable; it was necessary to pick and recover them. They certified that, had the cotton been sound, the damaged sold as pickings would have been worth £127 7s. 4d.; but, as pickings, it was worth, and brought, only £66 14s. 7d. They also certified the cost of picking and recovering 218 bales at £81 15.

They estimated the proper allowance for damage, on the 749 bales, which did not require picking and recovering, at £13 1s. They thus exhibit "a loss from country damage" of £155 8s. 9d. For this amount the plaintiffs sue, alleging that the cotton was thus unsound at the date of its package.

The district judge rejected the item of £13 1s. on the 749 bales, considering the alleged damage too insignificant to require notice, especially as it was a mere probable estimate, not established by actual picking, and for other reasons stated in his opinion. As the claim for that item is not pressed here by the plaintiff, it may be dismissed without further remark. Our attention will be confined to the reclamation as to the 218 bales.

It must be observed, in the outset, that it is indispensable for the plaintiffs' action, that they should prove the existence of the damage at the date of the sale, and should show the extent of that damage with such reasonable certainty as to enable a court to assess the just reduction of price. The burden is on the plaintiffs to make these facts reasonably clear and certain.

We have examined, with great care, the voluminous testimony offered in this cause. In some respects, it is conflicting; in others, indefinite. Hence we shall decline deciding, in this case, whether "country damage" of cotton, in bales, is an apparent defect within the meaning of the 2497th article of the Code. It is sufficient for the purposes of this suit, to say, that the evidence does not establish with reasonable certainty the extent of damage, if any, that existed at the date of the sale. To explain our reasons for this opinion, some detail is necessary.

The Glasgow brokers, on whose certificate the reclamation is based, were examined as witnesses under commission. They concur in saying that, by "country damage," they understand, damage received before the bale is put on board ship; that damage incurred by exposure to rain, in New Orleans, would be considered by them as "country damage;" and that they are unable to distinguish, at Glasgow, between damage before arrival at New Orleans, and damage after arrival at New Orleans, by any visible effect upon the cotton in the bales. Now it is clearly established, by the concurrent testimony of all the witnesses, that during the period which intervened after the delivery of the cotton to the plaintiffs, and the completion of the lading on shipboard, there was much bad weather. Every day, say the witnesses, there were heavy showers, which would last an hour or two, followed by a hot sun; and portions of the cotton were necessarily exposed to it, during the transit from the press and while on the wharf, where it was not protected by tarpaulins. It is also proved, by several witnesses, that if cotton is put wet on board of ship, it is apt to rot the bagging, and cause injury to the contents of the bale. A witness, of much experience, states that cotton is more liable to injury from rain in warm weather, and when it has attained a certain age, than when new. Now, when we consider that this cotton, before delivery to the purchaser, had passed through the usual inspection, classing, and approval by an experienced broker selected by the plaintiffs, and was considered merchantable by the pressman and the weigher, and yet, upon its arrival at Glasgow, a portion of it is found to be damaged, in the manner described by the Glasgow brokers, it is certainly more reasonable to attribute this damage, in part at least, to the exposure to rain in New Orleans, after delivery to the purchaser, than to suppose its entire previous existence, and that it had escaped the vigilance of the broker, the weigher, and the purchaser himself, who was in the yard several times during the delivery of the cotton.

<div style="float:left">Lowe<br>v.<br>Nelson.</div>

It therefore seems inadmissible, under the facts of this case, to assume that the entire damage, as exhibited at Glasgow, existed at the time of the delivery; while, on the other hand, if some of the bales were defective at the date of the sale, the evidence furnishes us no means of apportioning the damage then existing, and that which occurred in consequence of the subsequent exposure to rain and confinement in the hold of the ship. No attempt to make such apportionment appears to have been made by the district judge.

Aside from the question, whether " country damage " is an apparent defect of which the buyer must take notice, we think it obvious that it would be highly inconsistent with the interests of commerce, to let in reclamation, on the ground of " country damage," for comparatively small amounts, based upon an *ex parte* inspection in a distant country, after the exposure incident to shipment and transportation, without very clear and conclusive evidence. And, if courts demand stringent proof in such cases, it will lead to a mercantile vigilance on the part of buyers, and will probably tend, eventually, to the advantage of all parties interested in the great staple of our country, by inducing more care on the part of carriers, pressmen, and factors.

It is therefore decreed, that the judgment of the district court be reversed, and that there be judgment for the defendants ; plaintiffs paying costs in both courts.