(117 So. 590)

No. 26878.

**EHRLICH et al. v. ROBY MOTORS CO., Inc.**

June 4, 1928.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellants.

Dickson & Denny, of Shreveport, for appellee.

OVERTON, J. This is a suit to rescind, because of a redhibitory defect, the sale of an automobile, of the sedan type, and to recover $3,290, paid for it, with legal interest on that amount from April 4, 1923, until paid.

The automobile was purchased by plaintiffs on April 4, 1923, as a car for pleasure and recreation, for $3,290 cash. The car, when sold to plaintiffs, was represented to be a new car, properly constructed, in perfect condition, and fit for the purposes for which it was bought. The automobile gave plaintiffs some trouble before any specific defect was found in it. About five months after the

purchase, plaintiffs noticed what appeared to them to be a scratch on the cowl of the car; that is, on that part of the automobile between the hood and the windshield. About a month after this, at which time plaintiffs had driven the car about 7,000 miles, their attention was called to the fact that what they supposed to be a scratch was probably a break in the cowl. They immediately took the car to defendant, and were informed at its place of business that the supposed scratch was a break, caused by a defect in the construction of the car by not properly bracing the cowl.

Although defendant claims that the sale was made under the usual guaranty to remedy any defects that might appear within 90 days, and although this defect appeared after that time, defendant with plaintiff's consent, undertook to have the break welded, and to brace the cowl properly, which was made of aluminum, free of cost to plaintiffs. The mechanic hesitated to do the welding, because he doubted whether it would hold, but the welding was done notwithstanding. In doing it, the mechanic unavoidably burned the paint in the neighborhood of the break, and this necessitated the repainting of that part of the car. This work caused plaintiffs to lose the use of their automobile for a period of from four to six weeks.

Shortly after the car was returned to plaintiffs the cowl cracked in the same place. Plaintiffs immediately took the car back to defendant, who advised them that the proper thing to do would be to replace the aluminum cowl with a steel one. After some discussion, and a protest on the part of plaintiffs, the latter finally consented to accept the automobile with this change, provided the work was properly done. A new steel cowl was ordered from the factory, and upon its reaching Shreveport, the domicile of the defendant, it was put on the automobile by a special bodyman, sent to Shreveport by the manufacturer.

After the new cowl was installed, it was necessary to paint it. In doing this work, it was found impossible to make the color exactly match the rest of the car. Plaintiffs therefore refused to accept the automobile in that condition. Defendant then ordered the entire car repainted. This was done, and plaintiffs then accepted the car.

On the day following this acceptance, the paint cracked all over the body of the car in a checkered manner, due to the fact that the new paint was applied on the old. Thereupon plaintiffs tendered the car to defendant, leaving it in the latter's possession, and notified defendant that they did not want the car.

After this tender was made, defendant, who had no intention of accepting the tender, sent the automobile to a paint shop, had all of the paint removed from it, and had it repainted. The record shows that this last painting was done in a thorough and workmanlike manner. Upon its completion, defendant notified plaintiffs of what had been done, advising them that the car was in proper condition, and that, unless they called for it within a specified time, they would be charged with storage. However, plaintiffs did not then care for the car. Moreover, in the meantime they had brought the present suit to rescind the sale and recover the price. They therefore refused to accept the car.

By a preponderance of the evidence it appears that the putting of a steel cowl on a car in a workmanlike manner, and the proper painting of the car after the removal of the old paint will have the effect of placing the car in as good a condition as if the defect had never existed. The evidence leads to the conclusion that the cowl was properly put on and that the last painting was properly done.

The foregoing are the facts, as we find them, when the case was submitted to the lower court for decision. The judgment of that court was in favor of defendant. Since the judgment was rendered, and while plain-

tiffs' appeal was pending, according to a statement in defendant's brief, which, in the argument made in this court, was conceded to be true by plaintiffs, the latter obtained possession of the automobile and sold it.

The articles of the Civil Code pertinent to this case are the following:

"Art. 2520. *Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, *that it must be supposed that the buyer* would not have purchased it, had he known of the vice.

"Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."

"Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."

"Art. 2543. The purchaser who has contented himself with demanding a reduction of the price, cannot afterwards maintain the redhibitory action.

"But in a redhibitory suit, the judge may decree merely a reduction of the price.

"Art. 2544. The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."

■ Since it is conceded that the car has been sold, the action to rescind the sale necessarily fails, for plaintiffs are no longer in position to return the car to defendant, should the sale be rescinded. Where one has parted with the thing which he purchased, he cannot maintain an action to rescind the sale by which he acquired it.

■ However, it remains to be decided what effect the sale, under the circumstances, had on the action for a reduction of the price. Plaintiff has not prayed for a reduction of the price, but merely for the rescission of the sale and the recovery of the price paid. But the action for the reduction of the price is included in the redhibitory action, for, as appears from article 2543 of the Civil Code, the judge in the latter action "may decree merely a reduction of the price."

■ While, as we have said, a sale of the thing purchased defeats the action to rescind, based upon rehibitory defects in the thing, yet the sale does not defeat the right to have the price reduced upon the ground that such defects existed at the time of the purchase, for, in the exercise of the latter right, the return of the thing is not contemplated, but the vendee may retain it or dispose of it as he sees fit. The ruling in Peterson v. Burn, 3 La. Ann. 655, to the contrary, is difficult or impossible to reconcile with article 2543 of the Civil Code, and likewise with the earlier and later jurisprudence. Brown v. Duplantier, 1 Mart. (N. S.) 312; George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432. Therefore, as the sale of the thing purchased does not destroy an action for the reduction of the price, and as such an action is included in the redhibitory action, the question is presented whether plaintiffs have made such a showing as entitles them to a reduction of the price.

■ In order to entitle one to a diminution of the price, he must not only show that the defect complained of existed at the time of the sale, but he must also show with reasonable certainty facts disclosing the amount of the reduction to which he is entitled. Lowe and Pattison v. Nelson, Bradley & Co., 7 La. Ann. 646; Bonzano v. Auze, 10 La. Ann. 188.

■ When plaintiffs obtained possession of the car and sold it, the defect in it had been removed and the car had been properly painted. So far as appears, the car was in as good condition as it would have been had the defect not existed in it at the time plaintiffs purchased it, and possibly in better condition. While there is evidence in the record to the effect that a car of this description, with a defective cowl, is worth from $750 to $1,000 less than if the cowl were not defective, still this evidence does not take into consider-

ation that, in this instance, the defect had been removed. The only loss that it appears plaintiffs suffered by reason of the defect was the loss of the use of the car while it was undergoing repairs. While this loss may be said to affect the original value of the car, yet the period during which plaintiffs lost the use of the automobile does not appear with reasonable certainty, nor does the record otherwise disclose the extent to which that loss would affect its original value. Moreover, during the periods of repair, prior to the tender of the car to defendant, plaintiffs were furnished with another car for their use, which, in a large measure, offset and mitigated the injury resulting from the original defect.

For these reasons, the judgment appealed from is affirmed.