### McLACHLAN v. CUNY.*
### No. 4649.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

Waverly A. Henning, of New Orleans, for appellant.

Prowell, McBride & Ray, of New Orleans, for appellee.

JANVIER, Judge.

McLachlan sues on an overdue promissory note admittedly executed by Cuny.

Cuny asserts that the note was given in payment for certain cows purchased from McLachlan, and contends that, though each of the said cows was guaranteed by McLachlan's sales agent as capable of producing a certain specified quantity of milk, one of them produced no milk at all and died ten days after the sale, and the others have never produced milk in quantities even approximating the amounts they were said to be capable of producing.

On the trial it appeared that the sale had included not only the four cows referred to in defendant's answer, but also three calves, and the evidence of defendant's witnesses shows that the selling agent of plaintiff made certain representations as to the milk-producing qualities of the said cows, which representations had proved to be exaggerations, and that the calves were all so weak that none of them could stand alone, and later died. The evidence, however, shows that the condition of the sick cow which later died was called to Cuny's attention, and that he purchased this animal with full knowledge of that condition, and it also shows that the condition of the calves was readily apparent at the time that he inspected them before making the purchase.

The note which is sued on was made payable ninety days after its date, and on the day on which it matured the maker, Cuny, called on the holder, McLachlan, and complained about the fact that the living cows had not complied with the terms of the guarantee, and that one of the cows and all of the calves had died.

He also reminded McLachlan that the agent who had made the sale had, on several occasions, been notified of these facts and had many times promised to call in an effort to adjust the matter, but that he had not done so. On that day McLachlan referred Cuny to the attorney of the former, and Cuny called on the attorney to discuss the matter.

█ It is conceded that Cuny told the attorney of the deficiencies in the cows, and also advised him of the guarantee. Had the discussion terminated there, there can be no question that the defense should have been sustained. The cattle were sold on a suspensive condition. R. C. C. art. 2460, provides that:

"Things, of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer is satisfied with the trial, which is a kind of suspensive condition of the sale."

Since, under article 2471, where articles sold on a suspensive condition are destroyed pending "the fulfillment of the condition * * * the loss is sustained by the seller," the loss which resulted from the death of one of the cows would, by these codal provisions, have been placed upon McLachlan.

As to the other cow and the calves, the claim that there existed redhibitory vices would in all probability have been sustained

on the record as we find it, because there is no evidence to contradict that of plaintiff and his witnesses as to the guarantee and concerning the deficiencies in milk-producing qualities of the remaining cows.

But although these contentions, had they been insisted upon, might have been sufficient to defeat the claim on the note, Cuny discussed them with McLachlan's attorney and then agreed that, if given time, he would pay the note. It is true that he denies having made the agreement to pay if given time, and that he also denies having signed the indorsement, which now appears on the note and which reads as follows:

"Feb. 13/31. I will pay something on this note 30 days from date.
"W. J. Cuny [Signed]."

The evidence, however, convinces us that he did sign the said indorsement and did make the said agreement. Plaintiff's attorney states that Cuny's signature was affixed in his presence. The handwriting expert produced by Cuny to bolster his denial of his signature, instead of doing so, testified that the signature was very similar to the one on the face of the note admittedly executed by Cuny.

Furthermore, the fact that several letters written to Cuny by plaintiff's attorney after the date of the conference were not answered by Cuny create the impression that his interpretation of the results of that conference is not in accordance with the facts.

Of course McLachlan does not concede that a guarantee was given, nor does he admit that the cows were sold subject to test, or, in other words, conditionally. Therefore at the time of the conference between Cuny and McLachlan's attorney there was a substantial controversy: On the one hand the note had matured and suit thereon might have been filed immediately. On the other hand Cuny believed that under the facts he could defeat the action on the note. Under these circumstances the granting of the extension by McLachlan and the agreement by Cuny that he would recognize his obligation on the note and would make payment thereon in thirty days constitute promises equally binding on both parties.

Counsel for defendant maintains that, conceding that Cuny made the agreement, it was not binding on McLachlan, since no consideration was given to him for the extension; since Cuny merely agreed to comply with an already existing obligation, such an agreement cannot constitute legal consideration for the contract to extend.

But counsel overlooks his own contention that Cuny had a substantial, though controversial, defense to the action on the note. If he had a substantial defense, then the waiver of that defense was a sufficient consideration.

In Corpus Juris, vol. 13, p. 350, § 206, verbum "Contracts," we find that:

"It is a sufficient consideration to relinquish, or to agree to relinquish, a defense in a suit. * * *"

Likewise, in the same volume, on page 349, in § 203, we find that:

"The compromise of a doubtful and disputed claim will furnish a good consideration. * * *"

In Ruling Case Law, vol. 6, pp. 662, 663, § 71, we find the rule stated as follows:

"Analogous to the relinquishment of a right, is the compromise of a disputed claim whereby the claim is extinguished. Regardless of whether suit is pending in regard to the claim, the settlement thereof is a sufficient consideration for a promise because of the detriment to the party consenting to the compromise arising from the alteration of his position. There is authority to the effect that a compromise cannot be a sufficient consideration for a promise where there has been no dispute between the parties, or where the disputed claim is legally groundless. If this statement is to be understood as requiring the actual existence of an enforceable liability, it would seem to be opposed to the weight of authority, according to which the claim need merely be a doubtful one. If it is, the actual rights of the parties, whatever they may be, do not affect the question. The fact that the promisor is mistaken in regard to his liability is immaterial. If there is a doubtful claim the courts will not investigate into the relative merits or demerits of the claims of the parties."

And in the Restatement of the Law of Contracts, issued by American Law Institute, we find, in vol. 1 at page 80, under the definition of "Consideration," that a forbearance constitutes such consideration. On page 110 of the same volume we find an illustration which sets forth hypothetical facts identical with those we are now considering. The illustration is stated as follows:

"A is induced by B's fraud to promise $100 in return for a worthless chattel. On discov-

ering the fraud A promises B to pay as agreed. The promise is binding."

In the syllabus written by this court in the matter of Fleming v. Groffman, No. 7255, unpublished [see Louisiana and Southern Digest] decided March 11, 1918, we find that:

"An agreement is based upon sufficient consideration, which is meant to induce another to forbear criticism of the obligor's conduct or a resort to legal proceedings to test the legality of that conduct; * * *"

Counsel for defendant relies on the case of John M. Parker & Co. v. Guillot, 118 La. 226, 42 So. 782, but we do not think that that decision is apposite here. There, no consideration whatever was given for the extension. There was no denial that the note was due and that there was no defense thereto. The case may be distinguished on other points also.

■ Defendant alternatively contends that even if his principal defense fails, still he should not be required to pay the full amount of the note; that he is entitled to a reduction of the price in accordance with the reduction in value which he claims he has shown to exist. He relies on R. C. C. art. 2543, which, in part, reads as follows:

"But in a redhibitory suit, the judge may decree merely a reduction of the price."

We believe that the effect of the compromise agreement was to eliminate from consideration any such contention.

Having agreed that if given an extension he would make a payment at the end of the extension and would recognize the validity of the entire note, he cannot now be heard to again assert the contention as to the value of the articles which he bought.

In Galt v. Herndon, 16 La. App. 239, 133 So. 800, 802, in which, strangely enough, the sale of cattle was also involved, a maker of notes given in payment for cattle resisted payment, contending that the cattle were diseased, and, in the alternative, asked for a reduction in price. The notes had not been executed until after the discovery of the existence of the disease. In rejecting the claim for reduction in price, the court said:

"The action quanti minoris, or for the reduction of the price, is subject to the same rules as the redhibitory action. Civ. Code, art. 2544. As the defendant may not recover in a redhibitory action because he ratified the sale after the defect or vice was known to him, he likewise may not recover in an action quanti minoris."

■ There is another reason which prevents our applying the remedy provided by the action quanti minoris, and that is the absolute absence of proof of the true value of the cattle, or as to the extent of the deficiency. One of the witnesses for defendant testified that the cows never gave more than about a quart of milk a day each. Another witness testifies that they gave about two quarts, and defendant himself testified that they gave about a gallon or more. We have no way of determining how the cattle should be valued, even if we should come to the conclusion that defendant's own action has not estopped him to contend for a reduction in price.

In the case of Ehrlich v. Roby Motors Company, 166 La. 557, 117 So. 590, 592, the Supreme Court, in discussing the right to a diminution of price and with reference to the necessity for clear proof as to the amount of the reduction, said:

"In order to entitle one to a diminution of the price, he must not only show that the defect complained of existed at the time of the sale, but he must also show with reasonable certainty facts disclosing the amount of the reduction to which he is entitled. Lowe and Pattison v. Nelson, Bradley & Co., 7 La. Ann. 646; Bonzano v. Auze, 10 La. Ann. 188."

It further appears that the cows were retained by Cuny, and, at the time of the submission of this case nearly four years after the date of the note, were still being used by him in his dairy business. We also note that the cows have delivered to him several calves, all of which have been sold by him.

In William Whitman & Co. v. Solomon, 144 So. 292, we held that the retention of the article and the complete use thereof should be held to constitute a waiver to claim a reduction in price. In view of the fact that Cuny attempted to return the said cows, we doubt that the principle announced in William Whitman & Co. v. Solomon would be applicable, but we cite the fact that the cows were retained and used to show that, in all probability, the testimony of Cuny's witnesses as to the absolute uselessness of the cows was a gross exaggeration. We deem it proper, since we have referred to the case of William Whitman & Co. v. Solomon, to call attention to the fact that the doctrine which we there announced was criticised in Tulane Law Review, vol. 8, No. 1, pp. 121–123. But we need give no further consideration to this point, because the action quanti minoris is no longer available because of the compromise agreement.

Since, in the court below, judgment was rendered in favor of plaintiff as prayed for, for the reasons given the judgment appealed from is affirmed.

Affirmed.