ROGERS, Justice.
 

 This appeal is by a chattel mortgagor from a judgment perpetuating a writ of injunction which he obtained against the foreclosure of the chattel mortgage, reducing the mortgage indebtedness from $2,-045.64 to $1,545.65 and recognizing and enforcing the chattel mortgage on the reduced indebtedness, with interest and attorney’s fees; the parties litigant to pay the costs in equal proportions.
 

 The mortgagee has answered the appeal, asking that the injunction be dissolved with damages; in the alternative, that the judgment be increased to the full amount of the chattel mortgage notes, with interest and attorney’s fees, and that the costs be assessed against the mortgagor.
 

 The Sidney Machine Company, plaintiff in the executory process suit, is an Ohio corporation. The defendant, A. G. Blanchard, under the name of the Inferno Company, operates a manufacturing plant at Shreveport, La. The suit is on three chattel mortgage notes aggregating $2,-045.64, covering the balance due on the purchase price of a certain lathe built especially by the Machine Company for Blanchard.
 

 Before signing the chattel mortgage and notes and paying the cash portion of the purchase price of the lathe, Blanchard exacted of the Machine Company an affidavit certifying that the machine as shipped complied with the original specifications as modified by the subsequent agreements of the parties. This affidavit was signed by F. J. Fields, acting for the Machine Company, and forwarded to Shreveport. Subsequently, with the consent of the Machine Company the following provision was inserted in each of the chattel mortgage notes, viz.: “Subject to affidavit of F. J. Fields of Sidney Machine Tool Company, dated September 10th.,
 
 *479
 
 1934.” Blanchard then signed the chattel mortgage and notes, paid the draft for the cash portion of the purchase price, and accepted delivery of the lathe, which was installed in his plant.
 

 The lathe proved to be not wholly satisfactory to Blanchard, who claimed that in many respects it did not comply with 'the specifications. A voluminous correspondence ensued between Blanchard and the Machine Company concerning the alleged defects, during the course of which Blanchard continued to use the lathe in his manufacturing business.
 

 The Machine Company, in order to settle the dispute, offered to- take back the lathe and return the amount received on account of the purchase price; or, if that was not satisfactory, to receive the lathe .at its factory for inspection, and if it was found to be defective to remedy the defects, meanwhile sending Blanchard without cost a substitute lathe for temporary use.
 

 Blanchard expressed his willingness to accept the alternative offer of the machine company, but only upon its fulfillment of certain. conditions which he exacted. Those conditions were that the machine company, in addition to standing all the •expense, should deposit in escrow in the First National Bank of Shreveport the cash and chattel mortgage notes it had received until the lathe -should be returned, redating the' notes as of that date.
 

 The Machine Company agreed to accept Blanchard’s requirement as to the redating of the chattel mortgage notes, but refused to acceed to his demand that the cash and notes be placed in escrow, on the not unreasonable contention that it was a solvent and going concern of many years’ standing and that Blanchard’s demand was unusual and not according to the custom of its business, and that the value of the substitute lathe sent to Blanchard would more than offset the amount of the cash which it had received from him. Blanchard was not satisfied with this, but nothing further was done by either party to bring about an amicable adjustment of the controversy. After the lapse of several months, the Machine Company sued to foreclose its chattel mortgage, and Blanchard sued to enjoin the foreclosure. Alleging violation of contract and tender of the lathe, Blanchard asked for the rescission of the sale and for the return of the purchase price. The Machine Company, in reconvention, asked for judgment on the notes, with interest and attorney’s fees, and for the recognition and enforcement of its chattel mortgage.
 

 Although in his suit for injunctive relief, Blanchard alleged tender of the lathe, he failed to -prove any tender whatever. In fact, when on the trial of the case he was asked on cross-examination if he were willing to accept the return of his money and notes and surrender the lathe, he stated
 
 that he was
 
 unwilling to do
 
 that as it
 
 would cost him an additional $2,500 or $3,000 to duplicate the lathe.
 

 We are satisfied from our examination of the record that in certain particulars the lathe failed to comply with
 
 *481
 
 the specifications under which it was constructed. But we are also satisfied that Blanchard continued to use the lathe in his business from the day it was installed up to the day the case was tried in the court below. Not a single order was lost by reason of any of the alleged defects existing in the lathe. On the contrary, it was apparently able to do all the work demanded of it by Blanchard’s business.
 

 In these circumstances, Blanchard must be held to have accepted the lathe. But such acceptance does not deprive him of the right to a reduction of the purchase price. Civ. Code, art. 2541 et seq.; Templeman Bros. Lumber Co. v. Fairbanks, Morse & Co., 129 La. 983, 57 So. 309. And this is so notwithstanding Blanchard asked for the rescission of the sale and recovery of the price, not for its reduction.
 

 An action for reduction of the price is included in the redhibitory action, for in such an action the judge may decree merely a reduction of the price. Civ.Code, art. 2543; Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590.
 

 The trial judge allowed a reduction of $499.99 in the purchase price of the lathe. He also cast the Machine Company for one-half the costs of the litigation. We find nothing in the record to warrant us in disturbing the judgment.
 

 For the reasons assigned, the judgment appealed from is affirmed.