## CLEANERS EQUIPMENT CORPORATION v. WEIL CLEANERS, Inc.

### No. 5417.

Court of Appeal of Louisiana.
Second Circuit.

April 1, 1937.

Rehearing Granted April 30, 1937.

On Rehearing Jan. 3, 1938.

Writ of Certiorari and Review Denied Feb. 7, 1938.

Robert Layton and W. F. Pipes, both of Monroe, for appellant.

Solomon S. Goldman, of New Orleans, for appellee.

HAMITER, Judge.

Certain apparatus for clarifying the solvent used in dry cleaning was purchased by defendant, Weil Cleaners, Inc., from plaintiff, the Cleaners Equipment Corporation, under a written sales contract. The agreed purchase price was $816. Of this amount, $75 was paid in cash and a credit of $50 was allowed defendant for an old De Lavel clarifier accepted in trade. The balance of $691 was represented by 24 promissory notes dated June 8, 1931, and payable monthly. Eight of these were paid at their respective maturities.

In this suit, plaintiff seeks to enforce collection of the remaining sixteen notes. It prays for judgment for the amount there-

of and for recognition of its vendor's lien and privilege on the equipment sold to defendant.

Defendant, in its answer and reconventional demand, admits execution of the instruments, and that the notes are past due and unpaid. It avers, however, failure of consideration, in that the equipment was defective and wholly unfit and unsuited for the purpose for which it was sold, and that the purchase would not have been made if the defects and inadequacies had been known. Its prayer is that plaintiff's demands be rejected, and that there be judgment in reconvention for the amount paid on the purchase price and for certain expenses incurred by it in the receipt and installation of the equipment.

Thereafter plaintiff pleaded the prescription of one year in bar of defendant's reconventional demand. This plea was referred to the merits.

The case was tried on the issues thus created, and there was judgment rejecting the demands of plaintiff at its cost, and favoring defendant's reconventional demand for the amount paid on the purchase price and the expenditures made by it. Plaintiff appealed from this judgment.

The view which we take of the case on its merits makes unnecessary a consideration of plaintiff's plea of prescription.

In the year 1929, Mr. D. B. Weil assumed the control and management of defendant corporation, under the title of president. At that time, and for several years subsequent thereto, the clarifying of the dry cleaning solvent used by the firm was performed through the medium of caustic soda and an apparatus known as a De Lavel. The clarification of the solvent, or, in other words, the removal of all soap, fatty acids and other foreign substances from it, was desirable and necessary for economical reasons. If this were not done, it would become dirty, rancid, and malodorous, and could not be repeatedly used; and cleaning solvent is somewhat expensive.

On May 8, 1931, Mr. Weil addressed a letter to plaintiff company in which he requested information regarding the price, installation, and operation of the clarifying system manufactured by it. In reply, the prospective customer was informed that the cost of the 11A Ceco system was $1,425 f.o.b. Kansas City, Mo. This price included all fittings necessary to connect the system with two washers, excepting lengths of pipe and washer regulator valves. The other requested information was also furnished.

Mr. Weil wrote again on May 15, 1931, discussing the equipment which he was then using, and stating:

"In short, I want to know the very lowest amount that I will have to spend for a good clarification system and how long I may have to pay for it."

Plaintiff made due acknowledgment of that letter.

On or about May 26, 1931, Mr. T. Barnes Johnson, a sales representative of plaintiff company, called at defendant's establishment in the city of Monroe to discuss the subject of the above-mentioned correspondence. After this agent had inspected the cleaning plant and a conference had been had with Mr. Weil, the latter executed for and on behalf of his company a written purchase order for the equipment agreed on, and made an initial cash payment of $25. This written instrument recited that: "Full Ceco sweetner guarantee to be written on acknowledgment."

In due course an acknowledgment of the order was issued by plaintiff and forwarded to defendant. The property sold was therein described as:

"1 JF Ceco Purator complete, with 100 Lbs. Ceco sweetner    $735.00
2 BJ Viking Rotary Pumps complete @ $28.00 Each    56.00
1 Bowser Above-ground Tank (f. o. b. C. R. Russell Plant, Monroe, La.)*    25.00

F. O. B., K. C. Mo. & C. R. Russell Plant—    $816.00
* To be used as Agitator Tower
"NOTE: The above price includes five (5) days time of our installation supervisor.
"Purchaser is to furnish all straight pipe and all fittings in excess of those shipped."

The terms agreed on for the sale were:

"$50.00 Allowance on No. 300 De Laval, Serial No. 2496191, $25.00 cash with order; $50.00 sight draft with bill of lading. Balance in 24 monthly notes with interest at 6% and insurance at 2% per annum. First note to fall due 60 days."

The written acknowledgment also provided:

"The Cleaners Equipment Corporation guarantees Ceco Sweetner to remove all impurities from dry cleaners' solvent that

are removed by caustic soda. This includes removal of fatty acids, dry cleaning soaps, rancid and odor-forming bodies from actual solution in the solvent."

The equipment arrived in Monroe about June 8, 1931. On that date defendant executed the agreed 24 promissory notes, paid the $50 sight draft and freight charges of $36.92, and accepted the property. Subsequently, a mechanic in the employ of plaintiff company appeared for the purpose of making the necessary installation. The hauling of the equipment from the freight depot and the employing of a helper for the mechanic required expenditures on defendant's part of $6 and $5, respectively. Also, defendant was compelled to purchase a cone bottom tank costing $30, and certain pulleys, pipes, pipe fittings, and valves at a cost of approximately $80.

The work of installing the equipment began about June 14, 1931. On that same date, defendant dispatched a telegram to plaintiff reading:

"Understood price equipment included fittings except straight pipe. Am dissatisfied."

During the trial of the case Mr. Weil was questioned about the sending of this telegram. He was asked, "You made up your mind you didn't want this machinery before it was even installed, didn't you?" His reply was, "I did not want to have to pay $80.00 additional for pipe fittings, plus $30.00 for underground tank in order to make the equipment function." Also, on that date, he addressed a letter to plaintiff in which he complained of his being compelled to pay for the additional fittings.

The installation work was completed on June 17, 1931, and the following mimeographed certificate was then presented to Mr. Weil for his signature:

"This acknowledges that—

"1. The duties of the Ceco Installation Supervisor have been properly completed.

"2. The Ceco Supervisor has fully instructed the customer in the operation of the Ceco Equipment.

"3. The Ceco installation is acceptable and operating satisfactorily at this time."

Defendant's president caused the words "acceptable and" to be stricken from the third acknowledgment of the certificate, and added at the end thereof, in longhand, the statement: "System was purchased with understanding all pipe fittings were included in purchase price except straight pipe." He then signed the certificate for his company.

In a letter written to plaintiff on June 19, 1931, Mr. Weil stated:

"I am very much afraid that I have made the most serious mistake since I have been in the cleaning business. Not that the system does not function. I am justly proud of the appearance of my solvent at all times since the system has been put in—but I am very much afraid that the cost is prohibitive, both the initial cost and the cost of operation."

Plaintiff replied to that letter, making certain suggestions with reference to the operation of the installed system.

On June 25, 1931, defendant's president again wrote to plaintiff complaining of having to pay the cost of the above-mentioned fittings, and asserting that the operation of the system was unsatisfactory and that the operating cost was prohibitive.

In letters of June 27, 1931 and July 24, 1931, Mr. Weil ordered shipments of the Ceco sweetner and again registered complaints about the fittings and the cost of the system's operation.

A letter was sent by him under date of September 26, 1931, in which he said:

"I know of two cleaners—whom I have every reason to believe are at least lukewarm prospects for new clarification equipment. They may not buy during the next three months account of decrease in volume by reason of approaching cold weather—but I feel reasonably sure they could be sold one of your Model 10 or possibly as large a system as I have, by Spring.

"Enthusiasm on my part as a user of the equipment should add a bit of weight in its favor. I feel that as soon as I am financially able to procure a separate extractor for wet cleaning and secure a larger pulley for the agitating pump that I may be sold on the actual working of the system itself, but of course as long as I am forced to bear the financial burden of Johnson's sharp practice in merely shifting the cost of the fittings from my right to my left pocket I cannot conscientiously recommend the system—without adding for the benefit of my friends that they must have the order passed on by competent legal talent before signing.

"I know these two men are not getting the proper quality of solvent through their clari-

fication systems and they know it. They have in mind improving their clarification."

On March 28, 1932, plaintiff's manager wrote to the defendant and offered certain suggestions and comments with reference to a test which defendant had caused to be conducted on its cleaning solvent.

The mechanic who originally installed the system visited defendant's plant during the month of April, 1932. He made several changes in the arrangement of the machinery, and then conducted tests of it. A certificate similar to the one above quoted was signed by Mr. Weil on April 15, 1932. It was therein stated that:

"The Ceco installation is acceptable and operating satisfactorily at this time."

In August, 1932, Mr. Frank Fair, a chemical engineer, was sent by plaintiff to Monroe to assist in the proper operation of defendant's system. He was there approximately ten days, during which time he observed the system, made some changes in the equipment to provide a simpler and more efficient operation, and gave instructions as to the proper method of operating it. A new B. K. pump and a full set of filter cloths were installed by him without charge to defendant. He also made a chemical analysis of two samples of the solvent obtained at different periods during the operation of the plant, for the purpose of ascertaining whether or not the Ceco sweetner was properly clarifying the cleaning fluid. According to his testimony, he found on his arrival at the plant that the system was not being operated in accordance with the given instructions; and that on the day he departed the system was operating slightly above normal. A written report of his chemical analysis was given to Mr. Weil.

The record contains no correspondence had between the parties litigant, or their agents, other than an exchange of letters in January, 1933, subsequent to March 28, 1932. On January 14, 1933, defendant's attorney wrote to the attorneys for plaintiff as follows:

"I have yours of the 11th inst. Just to keep the record straight I call your attention to an inaccuracy in your said letter to the effect that Weil Cleaners Inc., 'had decided to keep the equipment, but repudiate the notes that were given in payment of same.'

"If you will again refer to my letter of the 19th inst. you will see that my client has not decided to keep the equipment and repudiate the notes. The last paragraph of my said letter clearly states that if the proposition of settlement contained in the preceding paragraph is not acceptable your client may take back the equipment installed in Weil Cleaners Inc's. plant and return the old equipment taken in trade and re-install same and reimburse Weil Cleaners Inc. the amount it has paid your client and the expenses Weil Cleaners Inc. incurred in installing the new equipment, or file suit.

"Your client is entitled to the equipment it installed in Weil Cleaners Inc's. plant and may have same back at any time upon returning the old equipment taken in trade, reinstalling same and reimbursing Weil Cleaners Inc. the amount it has paid your client and the expenses it incurred in installing the new equipment."

Plaintiff's attorneys replied:

"We are in receipt of your letter of January 14, in reply to our letter of January 11. You take exception to the statement we made in our letter that your client 'had decided to keep the equipment, but repudiate the notes that were given in payment of same'. The following paragraphs in your letter, placing your construction upon your former proposition, we think carry out the statement we made, as quoted above.

"The Cleaners Equipment Corporation spent hundreds of dollars trying to satisfy your client and tried hard to get him to use the cleaning powder according to instructions. He refused to do so. As late as last August, our client had a man at Monroe for ten days and also supplied new pumps and some other equipment at that time. We are relating this for the purpose of showing you that the Cleaners Equipment Corporation spent far more money in trying to satisfy your client than he paid on the contract price of the equipment.

"Unless you have something different to submit, we will be obliged to follow our client's instructions and let the matter rest for the present."

Defendant continued to use the purchased and installed system until April, 1934, and during that period ordered and acquired from time to time the necessary Ceco sweetner. When the equipment was discontinued, it was set aside and a filter and still clarification unit was employed. Under this last-mentioned process, the solvent was distilled by heat.

The defense and reconventional demand herein urged involve the redhibitory action and are founded on the provisions of article 2520 of the Revised Civil Code, which read as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

The evidence in the record is convincing that Mr. Weil was dissatisfied with the purchased machinery before its installation was completed. This dissatisfaction commenced primarily because of his being compelled to pay for certain fittings which he understood would be furnished by plaintiff. After the acceptance of the equipment and its installation, an economical operation of the system, such as he had expected and hoped for, was not obtained; but we think that this was due in some measure to his failure to faithfully follow the instructions furnished him.

The most serious criticism which defendant offers, in our opinion, pertains to the inability of the equipment to completely clarify the solvent. As is observed from the above-quoted provision of the purchase order acknowledgment, plaintiff guaranteed that Ceco sweetner would remove all impurities from the cleaning solvent, including fatty acids and dry cleaning soaps. The report given to Mr. Weil by plaintiff's chemical engineer discloses that two samples of the solvent which was being used by defendant were analyzed. One of these was taken August 22, 1932, and marked No. 1, while the other was taken about ten days later and was marked No. 2. At to free fatty acids in terms of oleic acid in ounces per gallon of solvent, the chemist found .27 ounces in No. 1, and .37 ounces in No. 2. With reference to free soap in terms of sodium cleate in ounces per gallon of solvent, he found .12 ounces in No. 1 and .23 ounces in No. 2. According to the record, neither the amount of free fatty acid nor that of free soap should exceed ten ounces per gallon for proper operation of the solvent.

However, on receiving the above analysis and report, defendant did not cease using the equipment. On the contrary, it was operated continuously until April, 1934. It is thus to be seen that from the time of installation until the last-mentioned date, a period of almost three years, the Ceco sweetner system was constantly employed in defendant's plant. And some of the correspondence in the record reveals that defendant had a total weekly volume of business in excess of $500. Under these circumstances, and in view of the well-recognized fact that most machinery will not indefinitely endure hard usage, we must conclude that defendant is not now entitled to invoke the redhibitory action, and that it is liable for the purchase price.

The defendant in the case of Fairbanks, Morse & Co. v. Boney, 156 La. 729, 730, 101 So. 122, 124, pleaded the redhibitory action when sued for the balance due on the purchase price of a tractor. The Supreme Court, speaking through Mr. Justice Rogers, stated:

"Even if it be conceded that the tractor was as defective as defendant now contends for, his continued use of the machine for nearly four years in the promotion of his own business interests, with full knowledge of its imperfections, was an unequivocable act of acceptance, and the vendor is entitled to recover the price thereof."

In the opinion of the case of Goode-Cage Drug Co. v. Ives, 16 La.App. 383, 133 So. 813, 815, we quoted with approval the following statement found in 24 Ruling Case Law, verbo, "Sales," 575:

"Where the article is one which must be used before its quality can be ascertained, this not being apparent from examination, it is the right of the buyer to make use of the property or such portion thereof as may be actually necessary to determine the quality, and such use does not affect the right to reject for failure to comply with the contract in that respect. On the other hand, if, after knowledge of the breach of warranty as to quality, the buyer continues to use and consume the goods received by him, but not in order to make a proper test as to quality, he waives his right to rescind and return the amount unconsumed."

■ It is true that defendant's attorney, in his letter of January 14, 1933, informed plaintiff's attorneys that the creditor could take back the equipment on making full reimbursement to his client, or could file suit. But this letter was written more than one and one-half years after

the installation of the system and after defendant had paid only eight of the monthly promissory notes, and it is clear from the correspondence of the attorneys, which is above quoted, that plaintiff was urging at that time payment of the remainder of the purchase price. Furthermore, the fact that plaintiff was a foreign corporation and could not be sued in this state afforded defendant no justification for the continued use of the equipment after it was aware of the alleged imperfections.

Accordingly, the judgment of the trial court is reversed and set aside, and there is now judgment in favor of plaintiff and against defendant for the following amounts, with 6 per cent. per annum interest thereon from their respective maturities until paid:

> $31.66 due April 15, 1932.
> $31.81 due May 15, 1932.
> $31.96 due June 15, 1932.
> $32.11 due July 15, 1932.
> $32.26 due August 15, 1932.
> $32.41 due September 15, 1932.
> $32.56 due October 15, 1932.
> $32.71 due November 15, 1932.
> $32.86 due December 15, 1932.
> $33.01 due January 15, 1933.
> $33.16 due February 15, 1933.
> $33.31 due March 15, 1933.
> $33.46 due April 15, 1933.
> $33.61 due May 15, 1933.
> $33.76 due June 15, 1933.
> $33.71 due July 15, 1933.

There is further judgment in plaintiff's favor recognizing its vendor's lien and privilege on the equipment sold by it to defendant. It is further ordered that the reconventional demand of defendant be dismissed.

Costs of both courts shall be paid by defendant.

### On Application for Rehearing.

PER CURIAM.

A rehearing is granted in this case. It is restricted, however, to a consideration of (1) whether or not defendant is entitled to a reduction of the purchase price of the cleaning equipment, and (2) if so, the reduction to be allowed.

### On Rehearing.

TALIAFERRO, Judge.

The pleadings, the issues, and the facts of this case are thoroughly and accurately discussed and analyzed in the opinion heretofore rendered by this court. In the interest of brevity, we shall not iterate them beyond the necessities of the present reconsideration of the case.

We reached the conclusion that defendant was without right to have the contract of sale involved rescinded because of the alleged redhibitory vices in the chattels the subject thereof, and gave judgment against it for the full balance due on the purchase price. In many respects the soundness of the reasons assigned and conclusions reached by us precedent to decree are vigorously assailed by counsel in application for rehearing and in supporting brief. Further study of the record has left us unconvinced of the tenableness of defendant's contention that the sale should be rescinded and the status quo ante restored as far as possible. It was argued alternatively, and forcefully so, that even though there be no valid grounds for rescinding the sale for the reasons alleged, that the rule in actions quanti minoris should be applied and the price reduced to the amount already paid thereon. In order to give deserved attention to this alternative plea, raised for the first time in application therefor, a hearing was granted.

Defendant has been for several years engaged in the business of cleaning clothes in the city of Monroe, La., and on May 26, 1931, purchased from plaintiff a lot of equipment to be employed in clarifying the solvent used in dry cleaning and removing impurities therefrom. The equipment was installed by plaintiff's agent, as agreed, and accepted by defendant on June 17, 1931; $75 cash was paid on the price and an additional credit of $50 given thereon, being the value of some old equipment taken over by plaintiff in the trade. The balance of the price was to be paid monthly, beginning August 15, 1931, and ending July 15, 1933, the first eight of which were paid at maturity. The equipment was used continuously until April, 1934, at which time it was replaced by new equipment. During the period of use, the evidence discloses, defendant's gross business amounted to some $500 per week. It is not contended that any business or customers were lost on account of the alleged deficiencies in or lack of expected functioning of the equipment.

We are convinced from the testimony bearing thereon that the new system did not at times function perfectly and that, because of this, more or less inconvenience

was intermittently experienced. Whether the lack of efficiency in this respect was due to inherent imperfections in the mechanism or to the incompetency or inexperience of the operators, or to some extent to both, the record is not convincing. But, when we recall that the system was in use continuously for practically three years and through it a large volume of business was regularly turned out, and that there was no loss of patronage during the time from the alleged deficiencies in the system, we are impelled to think that for other reasons the lack of functioning of the system has been to a material extent exaggerated. Defendant's president alone testified of the shortcomings of the system. He said that some of his employees' threatened to leave him unless the operating qualities of it were improved. None of the complaining employees was introduced as a witness in the case. He also testified that the faulty qualities of the system manifested themselves within thirty days after installation; yet more than once thereafter he expressed satisfaction with it, and as late as September, 1931, in a letter to plaintiff, in no uncertain terms, he expressed enthusiasm over his investment; and in this letter he made mention of the fact that he knew two other cleaners who were potential prospects for the purchase of like systems. He virtually said therein that his own enthusiasm over the system's efficient operation should have some influence with these two prospects; however, in this letter, he reiterated the complaint previously registered in regard to a tank and the extra fittings which he had to purchase and pay for, previous to installation of the equipment.

As expressed in our former opinion, the fact that defendant was compelled to expend over $100 above the cost price of the equipment for the tank, piping, and fittings to complete its installation to some extent prejudiced it against plaintiff and the system, and when, from its operation, the increased expense thereof over that of the old equipment was revealed, defendant's dissatisfaction became complete. However, as to this expense of operation of the new plant, defendant made no guarantee.

The action quanti minoris is founded upon the following articles of the Revised Civil Code, viz.:

Article 2541: "Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."

Article 2542: "The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition."

Article 2543: "The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action. But in a redhibitory suit, the judge may decree merely a reduction of the price."

■ To justify judicial reduction in the price of a chattel, there must be before the court evidence satisfactorily establishing the extent to which the price should, to meet the ends of justice, be scaled down. In Ehrlich v. Roby Motors Co., 166 La. 557, 562, 117 So. 590, 592, the court said: "In order to entitle one to a diminution of the price, he must not only show that the defect complained of existed at the time of the sale, but he must also show with reasonable certainty facts disclosing the amount of the reduction to which he is entitled. Lowe and Pattison v. Nelson, Bradley & Co., 7 La.Ann. 646; Bonzano v. Auze, 10 La.Ann. 188." Galt v. Herndon, 16 La.App. 239, 133 So. 800. See, also, Twin City Motor Co. v. Pettit et al., 177 So. 814, by this court.

■ The last expression of the Supreme Court on the questions here discussed is to be found in Sidney Mach. Tool Co. v. Blanchard, 186 La. 476, 172 So. 532. That case is urged by defendant in support of its alternative position. Under that decision, it is beyond question that defendant herein has been properly held to have accepted the equipment sold to it by plaintiff, and not entitled to have the sale thereof rescinded, but it is further held therein that by such an acceptance of and the continued use of the property the purchaser did not lose his right, if any exists, to demand a reduction of the price. In that case, a reduction in the price was allowed. Presumably, of course, there was evidence adduced to predicate this action upon. There is no testimony in this record upon which to base a reduction of the price, and it is doubtful if the inconvenience suffered because of the cleaning system's intermittent reduced functioning, if measured in dollars and cents, is susceptible of proof. We are of the opinion that no good purpose would be

served by remanding the case for the reception of evidence on this issue, and

For the reasons herein assigned, our former judgment and decree are reinstated and made final.

Since the foregoing opinion was written, a motion has been filed in this court by Doniel B. Weil, wherein it is alleged that he has acquired all of the assets and has assumed all of the liabilities of Weil Cleaners, Inc., and prays to be substituted as defendant in the case, and an order has been signed to that effect; therefore, the said Doniel B. Weil is substituted as defendant herein and the judgment heretofore rendered against Weil Cleaners, Inc., is now rendered and made effective against him.