381 So.2d 863 (1980)
Freddie Lee LACEY
v.
BAYWOOD TRUCK AND MACHINERY.
CAPITAL BANK AND TRUST COMPANY
v.
Freddie Lee LACEY.
Nos. 13032, 13033.
Court of Appeal of Louisiana, First Circuit.
January 21, 1980.
Rehearing Denied March 31, 1980.
Writ Granted in Part and Refused in Part May 9, 1980.
*864 James R. Coxe, Baton Rouge, for plaintiff-appellee Freddie Lee Lacey and defendant-appellee Edward J. Lacey.
Russell L. Dornier, Baton Rouge, for defendant-appellant Baywood Truck & Machinery, Inc. and plaintiff-appellant Capital Bank & Trust Co.
James M. Field, Stephen A. Mayo, Baton Rouge, for plaintiff-appellant Capital Bank & Trust Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
This appeal involves two cases consolidated for trial. In the first suit, Capital Bank & Trust Company of Baton Rouge asks for a deficiency judgment against Freddie Lee Lacey and Edward J. Lacey on a chattel mortgage note issued by them in connection with Freddie Lacey's purchase of a used truck. The second suit was brought by Freddie Lacey against Baywood Truck & Machinery, Inc. (Baywood) on the ground that the truck Baywood sold him had redhibitory defects. The trial court granted Freddie Lacey a reduction in price and rejected Capital Bank's claim on the note. Attorney's fees were awarded against Baywood. Capital Bank and Baywood appealed. Lacey answered the appeal asking for additional attorney's fees, damages, and a rescission of the sale or a further reduction of the price.
The issues on appeal are Capital Bank's status as a holder in due course, the existence of redhibitory defects, whether the sale of the truck defeats an action for rescission, whether Lacey has proved consequential damages, and whether Baywood can be charged with knowledge of defects in the truck.
On May 2, 1977, Lacey bought from Baywood for $21,446.50 a 1972 Brockway tractor and a 1977 Perfection dump body. Lacey made a cash payment of $4,000 and financed the balance with a chattel mortgage note issued to Baywood for $28,689.48. The note was later negotiated to Capital Bank. No payments on the note were ever made. On October 6, 1977, pursuant to Capital Bank's petition for executory process, the court ordered the issuance of a writ of seizure and sale of the tractor and dump body. The sheriff was unable to locate the truck for seizure until January 11, 1978. On March 29, 1978, the truck was sold at auction for $5,800, two-thirds of its appraised value. Capital Bank then brought suit for a deficiency judgment. The trial court ruled against Capital Bank apparently on the ground that Lacey had proved his defense of failure of consideration.
Capital Bank maintains it is a holder in due course and thus a defense of failure of consideration cannot be asserted against it. La.R.S. 10:3-302, 305. Lacey's position is that the following Federal Trade Commission regulation makes Capital Bank vulnerable to his defense:
16 C.F.R. § 433.2. In connection with any sale or lease of goods or services to consumers, in or affecting commerce as `commerce' is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:
. . . . .
(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE
Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained (with the proceeds hereof). Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.
"Consumer" is defined in Section 433.1 as "[a] natural person who seeks or acquires goods or services for personal, family, or household use."
*865 We find the above provision inapplicable to Capital Bank since the sale to Lacey was not a consumer transaction. Lacey purchased the truck with the intention to use it commercially for hauling, not for any personal, family, or household use.
Since the Federal Trade Commission regulation is not applicable and Capital Bank otherwise satisfies the requisites of due course holding (La.R.S. 10:3-302), Capital Bank is entitled to recover the deficiency due on the note plus 25% attorney's fees and interest as prayed for.
Baywood asserts Lacey cannot properly bring suit for redhibition since the truck was seized and sold at sheriff's sale prior to the filing of the suit against Baywood. Because Lacey could not return the truck to Baywood, the parties could not be returned to the status quo, which is the object of a suit for rescission. However, this does not preclude recovery in quanti minoris, as was ordered by the trial court. La.C.C. arts. 2541 et seq.; Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885 (1952); Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590 (1928); Bendana v. Mossy Motors, Inc., 347 So.2d 946 (La.App. 4th Cir. 1977); Stratton-Baldwin Co. v. Brown, 343 So.2d 292 (La.App. 1st Cir. 1977); Gauche v. Ford Motor Company, 226 So.2d 198 (La.App. 4th Cir. 1969).
The truck which Lacey bought from Baywood consisted of a five-year-old used tractor with a new dump body. James Singleton, Baywood's general manager, testified that when Baywood bought the tractor from the previous owner it was in very bad shape, only borderline salvageable. However, he maintains that when it was purchased by Lacey it was in very good condition due to extensive repair work. Baywood completely rewired the electrical system, rebuilt the engine, put in new air cleaners and four new batteries, and rebushed the suspension. The brakes on the four rear wheels were rebuilt and new front springs were put in. No repair work was done on the transmission, which was believed to be in good shape. The truck was sold with a thirty-day, fifty-fifty warranty, which obligated Lacey to pay half of future repair costs.
Lacey testified he had constant problems with the truck and was rarely able to get a full day's work done because of breakdowns. He calculated he made approximately thirty trips to Baywood for repairs between May and August, 1977. After August he went to other repair shops. His difficulties began the first day when he could not start the truck to drive it off the lot due to a short in a wire. Lacey maintained the truck continued to have starting problems despite numerous alternator adjustments by Baywood. About a week after he got the truck, Baywood had to replace the muffler and reinstall the hydraulic pump drive shaft which had fallen off. At one point the hydraulic pump failed when Lacey was trying to lower his dump bed. Lacey stated that even after repairs his dump bed always moved slower than normal and was sometimes difficult to get into gear. Approximately three weeks after Lacey bought the truck, the transmission fell out damaging the drive shaft and tearing a hole in the fuel tank. The rear section of the transmission had to be rebuilt. Lacey's half of the repair bill was $1,413.99. The recap tires on the truck blew out in less than ninety days. The exhaust manifold leaked. The engine consumed and leaked excessive amounts of oil. The air compressor allowed oil to get in the air tank causing the brakes to fail. Lacey also testified the lights on the truck lasted only two weeks due to faulty wiring.
In July or August 1977, Lacey's truck was in an accident and required $2,100 in repairs to the front end. This repair work was not done by Baywood. Lacey was injured in January 1978 when the engine backfired through the air filter burning him on the face and shoulders.
Two witnesses who worked with Lacey generally corroborated his testimony about his problems with the truck. Also a mechanic who worked on the truck in October and November 1977 testified some of the wiring was bad, the starter had to be replaced, *866 the transmission was grinding, compression was escaping into the motor, and the rear end was out of alignment, indicating problems with the bushings. The truck was inspected on February 23, 1978, by Alvin Doyle, who was qualified as an expert witness. Doyle testified he found the truck to be in such poor condition that he did not think it would be worth repairing.
We agree with the trial court that Lacey is entitled to a reduction in price due to defects existing at the time of sale. The problems which developed were far more numerous and severe than those normally contemplated in the purchase of a used vehicle, especially one represented as being in good condition.
The diminution which the trial court may decree under Civil Code articles 2541 et seq. is theoretically the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Muller v. A. K. Durnin Chrysler-Plymouth, Inc., 361 So.2d 1257 (La.App. 1st Cir. 1978); Guillory v. Pitre Ford Company, 345 So.2d 1274 (La.App. 3d Cir. 1977); Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir. 1974). Factors to be considered in calculating the reduction were discussed in Menville v. Stephens Chevrolet, Inc., supra at 861-2:
When a judge orders reduction of the sale price, one of the principal elements in formulating the award is the cost of repairing the defects which existed at the time of the sale. The cost of repairs, however, is not necessarily the sole measure of the diminution of value resulting from these defects. If the defects are few in number and quickly and simply remedied, the cost of repair may well be the only consideration. But when the defects are numerous and the repairs lengthy and frequent, then a greater reduction is warranted, because a forewarned buyer would not reasonably pay the full price, reduced only by the cost of repairs, if he knew the extensive repairs of the defects would significantly curtail his use and cause him considerable inconvenience and aggravation. . . .
To prove the theoretical price to which the actual sale price should be reduced, a plaintiff attempts to establish the fair value as of the time of the sale, if the defects had been known. Evidence as to this theoretical value may consist of expert opinion testimony, of costs expended to place the thing in sound condition, or of other facts bearing on the reduced price a forewarned buyer would have paid and a seller with knowledge of the defects would have accepted. But in the final analysis the trier of fact cannot mathematically calculate what price the parties would have agreed to, if they had known of the defects; the trier must consider the overall evidence and, using limited discretion, must set a reduced sale price which fictionally represents the fair value at the time of sale.
Also see Bendana v. Mossy Motors, Inc., supra.
The trial court ordered Baywood to refund the $4000 down payment, canceled any amounts Lacey owed Baywood for repairs, and relieved Lacey of his obligation to pay Capital Bank the balance of the purchase price plus finance charge. The effect of this judgment was to reduce the purchase price to zero. A diminution of the price to zero is clearly erroneous. There was testimony that the salvage value of a truck of that type was $5,000. The new dump bed alone cost Baywood $3,100. When the tractor was traded to Baywood, Singleton valued it for trade-in at $9,500. The appraisal for the sheriff's sale made 13,215 miles and eleven months after purchase was $8,700.
In determining the proper amount of reduction, we are somewhat hindered by the lack of any testimony on the cost of repairing the numerous defects. However, after carefully considering the proven defects, the frequency of the breakdowns, the associated inconvenience and the continued poor performance after repairs, we conclude the price should be reduced by $6,500 and any sums owed Baywood for repairs should be voided.
*867 Lacey also asks for damages to cover the injury and medical expenses incurred when the truck backfired and burned him. The trial court denied recovery on the ground Lacey had failed to prove a defect attributable to Baywood had caused the accident. We affirm this part of the lower court judgment. The incident occurred eight months after the sale and after the truck had been in a wreck and had been worked on by repair shops other than Baywood. No proof was offered to show that the malfunction was due to a defect existing at the time of sale.
Baywood protests the trial court's award of attorney's fees. Counsel correctly points out attorney's fees are recoverable only from a seller who knew or is charged with constructive knowledge of the defects and fails to declare them. La.C.C. art. 2545. An artisan, builder, or manufacturer is presumed to know the vices of the things he constructs. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); Muller v. A. K. Durnin Chrysler-Plymouth, Inc., supra; Brown v. Dauzat, 157 So.2d 570 (La.App. 3d Cir. 1963). Lacey did not prove Baywood had actual knowledge of the defects. However, we think the presumption of knowledge is applicable due to the extensive overhaul performed by Baywood prior to the sale. Baywood was in effect the manufacturer of a large part of the truck when it was purchased by Lacey. Singleton called it "a ready-made truck out of Baywood." We affirm the trial court's award of attorney's fees and add to it $500.00 to cover the additional fees for work on the appeal.
For the foregoing reasons, the judgment appealed is affirmed in part, reversed in part and amended. Costs are to be shared by Lacey and Baywood.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.