ELLIS,. Judge.
The plaintiff on September 1, 1948 sold to the defendants, William Nelson and Harry Chozen a used D-7 bulldozer and scraper for $7,000 cash. The plaintiff, during November and the early part of December made certain repairs on the bulldozer, the charges therefor totalling $1068.44. Defendants having failed or refused to pay for the repairs, plaintiff filed this suit to recover same and seized the bulldozer under a writ of provisional seizure which was released upon the defendants furnishing bond in the amount of $2,-000.
The defendants admit that certain repairs were made to the bulldozer by the plaintiff but defend the suit upon the ground that they purchased the machine from the plaintiff a short time before the repairs were made and that the plaintiff having warranted the machine to 'be in first class condition when, as a matter of fact, it was not, that the repairs were made by plaintiff in order to make the machine suitable and fit to do the work for which it was sold under plaintiff’s warranty and they are not liable for the labor and materials furnished and the expenses incurred by the plaintiff in making such repairs. Defendants, assuming the position of plaintiff in reconvention, further contended that because of the hidden defects and vices that existed at the time of the sale they are entitled to a reduction of $2500 in the purchase price of the machine.
The case was tried and judgment rendered in favor of the plaintiff in the sum of $552.25-with recognition of the lien and privilege claimed by the plaintiff on the bulldozer. From this judgment the defendants have appealed to this court and the plaintiff has answered the appeal asking that the judgment be amended by increasing it to the full amount claimed.
There is no doubt that the plaintiff made the repairs and furnished the parts as shown by itemized statements which are, in effect, bills for the work, dated November 18, November 24, November 27, 1948 and December 6, 1948.
*335 The law applicable to this case is set forth in the following quoted articles of our Civil Code:
Article 2475: “The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells.”
Article 2476: “The warranty respecting the seller has two objects; the first is the buyer’s peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices.”
Article 2520: Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Article 2521: “Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.”
Article 2522: “The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.”
Article 2530: “The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.”
There was no waiver of any warranty by the defendants and, therefore, the plaintiff warranted the machine as suitable for the purpose intended. A. Baldwin Sales Co., Inc. v. Mitchell, 174 La. 1098, 142 So. 700. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693. In addition, the District Judge found, and we thoroughly agree with him, that at the time of the sale of the machine the plaintiff warranted it to be in first class condition and suitable for the work for which it was sold except for the tracks, rails and rollers. The facts as revealed by the record show that the defendants, previous to the purchase of the machine, watched it work for fifteen or twenty minutes, and, after discussing the matter with the plaintiff and being told that the machine was in good condition other than as stated, purchased same on September 1, 1948. The machine was in DeQuincy, Louisiana, and on September 2d the defendants began to use the machine, and the first day in seven hours of work the machine used five gallons of oil. The machine was operated by the same person until September 28th and it used as high as ten gallons of oil in one day during that time. It is shown that during that period they were only able to operate it on an average of from four to six hours per day and that it did not work each day of the twenty-eight days and was continuously breaking down.
Complaints were made about the condition of the machine and plaintiff installed new rings in the engine at his own expense. The machine was operated on September 28th for the first time after the installation of the new rings for approximately two hours. Shortly after the rings were placed in the machine by the plaintiff at his own expense it was moved from De-Quincy to Lake Charles where it was put to work and was still found to use an excessive amount of oil and, in addition, the “clutch links” kept breaking and the defendants then put the machine in their shop and had a complete new clutch installed without saying anything to the plaintiff about it.
The testimony shows that this machine, after the rings were put in at DeQuincy, was used two hours and when moved to Lake Charles it worked three different days for only a total of eight hours when it was moved to Ville Platte, and after working thirty minutes a connecting rod in the engine burned out. It was then that the plaintiff was called, and on November 18th went to Ville Platte and began making the repairs which are the subject matter of the present suit.
It is shown that on November 18th the plaintiffs fixed the connecting rod and installed a new bearing and three rings which took a total of sixty-four hours, and three trips totalling 600 miles and $213 worth of parts. The total amount of the *336 repairs and parts be-ing $344.14, the Lower Court reduced the purchase price by this amount on the erroneous finding of fact that this was the amount it cost to overhaul the engine, and that the engine on the day of the sale was not suitable to do the work and contained latent defects and would have to be overhauled, and the cost of the same would be as shown by the itemized statement or bill introduced.
We are not impressed with the testimony that the connecting rod burned out as the result of the machine being operated down hill or standing still for fifteen minutes with the motor running with the front end pointing down hill and as a result the rear connecting rod did not get sufficient oil. There is no positive testimony that this machine was left with the motor running long enough to burn out a connecting rod, merely that the plaintiff thought that is what happened, whereas it is disputed by the defendants. It is more likely that the rod burned out due to the worn or defective condition of the oil distribution system of the motor.
The plaintiff was obligated under his warranty to make all' the repairs which he made as shown by the bill of November 18, 1948 and he is not entitled to collect this amount. The defects were latent and were not apparent by simple inspection.
We are also of the opinion that these defects or weaknesses which manifested' themselves from the first day that the defendants operated the machine until it finally broke down to where it could not be operated in December, 1948, existed in the machine at the time of the sale.
On November 24th plaintiff, as shown by bill or itemized statement, installed final drive bearing, adjusted ring' gear, overhauled a steering clutch assembly for which there was $250 labor and $265.31 parts, or a total of $515.31. There is no doubt that all of these parts were warranted and if they had been in good condition on the date of the sale would not have needed to be replaced this soon. There is nothing in the record to show that the necessity for the replacement of these parts on such a machine could be due to anything other than use. The record shows that this machine was used a comparatively small number of hours the first twenty-eight days that defendants owned it, and during this time it was broken down the greater part of the time and the plaintiff, at his own expense, installed rings in an attempt to correct the defective parts of the motor. After the rings were installed the machine was used two hours at DeQu-incy, moved to Lake Charles and used eight hours, then moved to Ville Platte during which time the repairs now in dispute were made and it was used a total of twenty hours, making a total of thirty hours use of this machine even with all the repairs which the plaintiff made to it. It is apparent that the machine was badly worn at the time of the sale.
The machine was hauled back to Lake Charles from Ville Platte on February 10, 1949 and it is shown that the steering gear had broken down and it could not be steered, and that it blew oil out of the exhaust pipe and had water in the base. The machine, even after all of the repairs, still would not operate.
The plaintiff was obliged under his warranty to make the repairs as shown by the statement of November 24, 1948, and is not entitled to recover for same.
The plaintiff next worked on the machine in Ville Platte on November 27, 1948 for which he charged $38. It is shown that these repairs were due to the fact that the transmission got out of shift but it is undisputed that a competent operator could have gotten it back in without sending for a mechanic. The plaintiff is entitled to collect for this repair as it is not shown to be due to a defect in the transmission.
On December 6th, 7th, 8th, and 9th, plaintiff again worked upon this machine. These repairs were made on the track and rollers which were expressly excluded from any warranty and, therefore, plaintiff is entitled to collect this amount which is $171.
While plaintiff testified that he had put all new parts in this engine approximately two months prior to its purchase by the defendants, and the operator of the machine *337 for the plaintiff also testified that it was in good order the day before the defendants bought it and began to operate it, this could not be true unless the work done upon the machine and the installation of the new parts was done in a defective manner, for there is no doubt that this machine immediately used excessive amounts of oil and began to break down in various parts which were covered by plaintiff’s warranty. It is clearly shown by the testimony that where new rings are installed in a motor such as the bulldozer in question and it continues to use oil, it is a sure sign that the sheafs, which are a part of the motor, are worn out and also the pistons.
The defendants offered an expert witness, C. M. Key, who testified that he had examined this machine when it was brought into the shop on the 10th of February, 1949, and that it was unloaded with a winch as it would not unload itself; that he had gone over it and that it would take approximately $1000 worth of labor, $800 or $900 worth of parts which did not include a new crank shaft which, if defective, would include an additional $235 plus labor to install. He had run the engine in the shop and it blew oil out of the exhaust to such an extent that he could hardly stay on the seat, and it was also getting water in the base of the engine, and he testified that such a condition must have existed for some length of time and that the machine could not possibly be used in that condition. When asked what would be needed to make this machine suitable for the purpose for which it was sold, this witness stated: “It needs to have the engine completely overhauled, the sheafs, pistons and rings and inserts. I couldn’t say about the crankshaft. It needs a steering clutch and a right hand brake. The transmission needs complete overhauling. I couldn’t say just what that would run but it would come pretty nearly to that. The right bellow is out, worn out.”
It was his opinion that either the work which was done on the machine was improperly done or that it was worn out before. There is no doubt that the defects in the motor manifested themselves the first day that the defendants operated this machine and that the defects were latent and covered by plaintiff’s warranty. As far as we are able to determine from the testimony, all of the defects in this machine which were covered by the warranty were latent. We are also of the opinion that they existed at or prior to the date of the sale, for they manifested themselves within such a short time after the sale that it; would have been impossible for them to have worn out within thirty to sixty days, especially since this machine was operated only thirty hours during the last sixty days, and a very few number of hours the first twenty-eight days. The work was not shown to have been too difficult for this type of machine and eight to ten hours per day was considered a days work for a 'bulldozer. In other words, during the last-sixty days the defendant operated the machine, we might say, only three full days.
We are, therefore, of the opinion that: this machine was defective to such an extent that it was practically useless for the-purpose of performing the work for which-it was bought and that defendants would not have purchased it had they known of' the vices which immediately began to manifest themselves the day after its purchase- and throughout the entire time they attempted to operate it.
In view of the testimony of the expert witness that it would take $1800 to repair this machine so that it would be suitable for the purpose for which it was sold, and as the plaintiff has shown this to be a small or reasonable amount for repairs on such a machine, we are, accordingly, allowing a reduction in the purchase price for this amount.
For reasons assigned, the judgment appealed from is reversed, annulled and set aside, and it is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants, plaintiffs in recon-vention, William Nelson and Harry Cho-zen, and. the co-partnership of • William Nelson and Harry Chozen, in the full sum of $1800 with legal interest from the date of judicial demand until paid, subject to a credit and judgment in favor of plaintiff, Albert V. Andries, and against the defendants, William Nelson and Harry Chozen *338 and the copartnership of William Nelson and Harry Chozen in the full sum of $209.-00 with legal interest from judicial demand until paid.
It is further ordered that the costs he equally divided between the plaintiff and defendants.
It is further ordered, adjudged and decreed that the writ of provisional seizure be now recalled and that defendant’s bond in the amount of $2000 be cancelled upon the payment of all costs in connection with the issuance of the writ of provisional seizure and the release of the D-7 Bulldozer under the bond.