**BROWN v. D. W. WINKELMAN CO., Inc.**

No. 13438.

United States Court of Appeals
Fifth Circuit.

June 30, 1952.

Rehearing Denied Oct. 7, 1952.

---

696

P. Z. Jones, Ross R. Barnett, Jackson, Miss., J. Raburn Monroe, Bat P. Sullivan, Jr., New Orleans, La., for appellant.

William F. Suddath, Jr., P. H. Eager, Jr., Jackson, Miss., Louis Young, Syracuse, N. Y., for appellee.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

In a suit in the nature of a suit for reduction in the purchase price based upon a contract for the sale of several large pieces of used or secondhand dirt moving machinery the District Court rendered judgment for the defendant. The Appellant Brown, the purchaser, had paid to the Appellee Winkelman, the seller, the full purchase price of $53,425.05.

The District Court filed extensive findings of fact and conclusions of law in which it found the facts in favor of the purchaser, Brown, to the extent that the seller, Winkelman, had not delivered to Brown what it had contracted to sell, but further found that there had been a waiver by Brown of his rights to complain of such failure because he paid the part of the purchase money remaining unpaid, $38,412.05, and accepted the machinery knowing that Winkelman had not performed its contract.

The facts as found by the District Court may be briefly summarized as follows: Brown, a resident of California, inspected, but did not test, in Louisiana, machinery of Winkelman with the view in mind of purchasing the same. Winkelman agreed to sell the equipment to Brown and to repair and recondition it for a consideration of 85% of the price of new machinery, this percentage being the maximum ceiling price under the rules of the Office of Price Administration for reconditioned and rebuilt machinery. Brown paid $500.00 to Winkelman for an option on the machinery with the understanding that if the option was exercised Winkelman would recondition and repair the machinery. Brown returned to California, raised $14,500.00 in cash, and wired the same to Winkelman in Louisiana in exercise of his option. Winkelman shipped the machinery with a bill of lading attached to a draft for the remaining unpaid purchase money of $38,425.05, but without repairing and reconditioning it, shipping it in the same condition as it was when Brown had inspected it in Louisiana. When it arrived in California on six railroad flat cars, Brown inspected it and found from its external appearance that it had not been repaired and reconditioned. Brown sought legal advice in California, and sought the advice of the local Office of Price Administration, and on the advice obtained from these sources, consummated two loans on the bases of first and second mortgages.

on the machinery to raise the balance of the purchase price evidenced by the draft of $38,425.05, and from the proceeds of those loans paid said draft and received the bill of lading. Brown also paid from his own funds the freight bill of $4,221.52. The equipment was unloaded and, in the words of the District Court, "when it was unloaded it was found that it would not move under its own power and one (machine) was carried direct to the repair shop and used only from which to remove parts to repair others. One of the D8's was repaired and rebuilt at a cost of $5,-300.00. It could not be used till repaired. One of the DW10's would not run at all and was never put in condition to run." While Brown had not theretofore tested the machinery under its own power, he knew from the thorough inspection he had given it that it was defective and not suitable for his purposes. Both Winkelman and Brown knew that the machinery was worthless to Brown in the condition in which it was shipped. At that time the demand for this kind of equipment was great, and it was almost impossible to find such machinery.

When the option was executed and when the draft was paid, both Brown and Winkelman knew the OPA Regulations relative to sales and neither one complied with the regulations and neither one intended to do so. No written certificate, as required by the regulations, was asked or given. When Brown paid the draft, however, he thought that he would be able to hold Winkelman under the OPA Regulations. In the course of trial in the District Court that intention was abandoned, and this suit is now strictly in the nature of a reduction in the purchase price.

Quoting further from the District Court, "There was no concealment of any defects by Winkelman or its agent nor any misrepresentation of fact as to the defects existing at the time. LaPoint did tell Brown that the defects would be repaired before shipment was made but these repairs were not made but Brown knew they were not before he unloaded the machinery. LaPoint in substance declared the vices orally at the time of the option and agreed to repair them but did not do so."

There is a strong conflict in the testimony as to whether LaPoint did in fact agree to repair the defects or rebuild the machinery and also as to whether he had any authority so to do. The District Court found these disputed facts in favor of the appellant, purchaser, Brown.

As a part of its conclusions of law the District Court said:

"The defendant in this case has met the burden and has shown that the plaintiff knew of the defects when he bought the option and also when he unloaded the equipment in California and before he paid the draft in California. After learning that the machinery was not rebuilt and that it was still defective while on the cars in California and did not measure up to what he had agreed to purchase and before using the same and changing its condition and mortgaging it so as to put it without his power to restore the status quo, he should have advised and notified defendant and immediately put defendant on notice so that he could protect himself. When plaintiff went to the OPA and followed its advice without notifying defendant he waived his rights under the redhibitory act under all the facts of this case, if it were ever applicable under the facts hereof."

 The contract was made in Louisiana while the goods were located there, and it is not disputed that the rights of the parties are governed by the law of Louisiana. A number of the provisions of the Louisiana Civil Code of 1870 are cited by the parties as applicable, and for convenience we set forth those provisions, in the footnote.[1]

1. LSA–C.C. "Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

The appellant, without the citation of any case as authority, makes some contention that, under the Louisiana Civil Code, the title to the machinery was transferred to Brown when he exercised his option to purchase by telegraphing the $14,500.00 to Winkelman. It seems clear to us, however, under the District Court's findings, that what Winkelman agreed to sell and Brown agreed to purchase was not the machinery as it then existed, but the machinery after it had been repaired or rebuilt.[2] When the machinery arrived in California and Brown discovered that the repairs or rebuilding had not been done as agreed, he then had a right to refuse to accept the machinery or to pay the draft attached to the bill of lading. It is not questioned that if Brown had pursued that course at that time, he then had adequate remedies to recover the $15,000.00 which he had already paid Winkelman.

The Louisiana Courts have held that the purchaser's remedies for defective quality are the redhibitory action (returning the object of the sale and suing for the rescission of the sale, plus damages), and the action of *quanti minoris* (keeping the object and suing for the reduction of the price, plus damages). In this case the purchaser seeks to pursue the action of *quanti minoris*. The appellant insists that

Art. 2476. "The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices."

"Article 2520: Definition of redhibition.—Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

"Article 2521: Apparent defects excepted.—Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.

"Article 2522: Disclosed latent defects excepted.—The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.

"Article 2523: Latent defects—Inanimate things.—With regard to inanimate things, the latent defects which give rise to the redhibitory action are in general all such as are comprised in the definition expressed at the commencement of this paragraph.

\*　\*　\*　\*　\*

"Article 2541: Defect in thing sold—Reduction of price.—Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.

"Article 2542: Defect in quality—Reduction of price.—The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition.

"Article 2543: Election between reduction and redhibition—Effect.—The purchaser who has contended himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.

"But in a redhibitory suit, the judge may decree merely a reduction of the price.

"Article 2544: Action for reduction—Rules governing.—The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."

"Article 2545: The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."

"Article 2547: A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud \* \* \*.

"It may, according to circumstances, give rise to the redhibition, or to a reduction of the price, and to damages in favor of the buyer."

2. The obligation to rebuild or repair secondhand machines before delivery has been treated by the courts as a warranty of their condition. See 46 Am.Jur., Sales, Secs. 327, 328; 77 C.J.S., Sales, § 330, p. 1192; Andries v. Nelson, La.App., 46 So.2d 333.

in order to maintain that action, as distinguished from the redhibitory action, it was not necessary for the purchaser to reject the machinery when it arrived in California, and it must be conceded that the authorities upon which the appellant relies lend strong support to his view.[3] The appellee on the other hand carefully distinguishes on its facts each of the cases relied on by appellant, and points out that in each of them the sale had been wholly completed and consummated and that it was not until some later date that the buyer discovered the defects in quality in the object of his purchase. The appellee relies particularly upon certain decisions of the Louisiana Courts set out in the footnote.[4]

The District Judge observed difficulty in drawing the line of distinction in some of the Louisiana cases construing the various articles of the Louisiana Civil Code and we have encountered the same difficulty. When we get back to the provisions of the code itself, however, it does seem clear that, under Article 2521, defects which the buyer might have discovered by simple inspection and, a fortiori, defects of which the buyer had actual knowledge at the time of purchase are not among the redhibitory vices. It further seems clear that under Article 2544, the action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action. We conclude, as did the District Court, that under the Louisiana law, and in the absence of special circumstances not here present, a purchaser with full knowledge of the vices of the article cannot without objecting, consummate the purchase and thereafter maintain an action for the reduction of the price. We think that the judgment of the District Court was correct and it is

Affirmed.

3. Bulkley v. Honold, 60 U.S. 390, 15 L. Ed. 263; Nelson v. M. C. M. Truck Lines, 209 La. 582, 25 So.2d 236; Templeman Bros. Lumber Co. v. Fairbanks, Morse & Co., 129 La. 983, 57 So. 309; Sidney Machine Tool Co. v. Blanchard, 186 La. 476, 172 So. 532.

4. Galt v. Herndon, 16 La.App. 239, 133 So. 800; McLachlan v. Cuny, La.App., 156 So. 76; Elfant v. Trahan, 156 La. 220, 100 So. 404; Logan Pottery Company v. Mosley, La.App., 151 So. 150; Hydrotex Industries, Inc., v. Cartwright, La. App., 45 So.2d 93.