389 So.2d 859 (1980)
DIXON ENTERPRISES, INC.
v.
RESTAURANT PRODUCTS, INC. and Loubat Glassware & Cork Company, Ltd.
No. 10838.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1980.
Ivor A. Trapolin, New Orleans, for plaintiff-appellee.
Dale C. P. Cannizzaro, New Orleans, for Restaurant Products, Inc., defendant-appellant.
*860 James Burnett Aime, New Orleans, for Loubat Glassware & Cork Co., Ltd., defendant-appellant.
Before CHEHARDY, BARRY and SARTAIN, JJ.
CHEHARDY, Judge.
Defendants, Restaurant Products, Inc. (Products), and Loubat Glassware & Cork Company, Ltd. (Loubat), appeal from a trial court decision in favor of plaintiff, Dixon Enterprises, Inc. (Dixon), and against both defendants, in solido, rescinding the sale of two PS-1 Electric Purofryer Systems; awarding plaintiff the sum of $6,956.66, together with legal interest from the date of judicial demand and all costs of the proceedings; and dismissing the third party demand of Loubat against Products. Plaintiff answered the appeal, asking that the trial court judgment be amended to include an award of reasonable attorney fees for the prosecution of this suit on the trial level and requesting an award from this court of additional attorney fees for prosecution on appeal.
Dixon was the owner of two restaurants in the New Orleans area which operated under the trade name of "Ruby Red's." One outlet was located on Esplanade Avenue near the river in New Orleans proper and the other establishment was on Hessmer Street in Metairie, a suburb of the City. The restaurants exclusively served hamburgers or steakburgers and French fries.
Dixon went to a restaurant show in Chicago in 1976 and became interested in two Electric Purofryer Systems for the purpose of frying potatoes. He discussed the purchase with a representative of Products and was given literature promoting the product with such claims as: "Labor savings from continuous filtering; extended oil life from removal of contaminants; cooking oils last 500% longer; eliminates messy manual filtering and reduces clean-up time by as much as 90% * * * finest quality foods cooked consistently at their golden, flavorful best, and actually at less cost than with ordinary frying methods."
On deciding that he would purchase the systems, Dixon was informed by Products that the purchase must be made through a distributor. Although Loubat had not sold any of these systems previously, they had sold other Products equipment and agreed to act as distributor for the equipment when approached by Dixon.
On July 8, 1976, Dixon bought the systems from Loubat, writing a check to that defendant for $1,840.80 as a down payment, and furnishing Loubat with a promissory note for the sum of $4,303.26, secured by a chattel mortgage executed in favor of Loubat. Loubat did not specifically warrant or guarantee the fryers, although parts were ordered through them.
Soon after installation in both locations, problems began to develop. The first incidence of trouble, which occurred prior to August 15, 1976 (when the machines were serviced) concerned the thermostats, which required resetting. Shortly thereafter, Dixon testified, it became obvious that the machines required an oil change every five or six days (although at times there might be a 10- to 12-day period without the necessity for changing it). Because the equipment had a reservoir of 11 gallons, as opposed to Dixon's formerly used gas fryer's capacity of five gallons, this resulted in increasing cooking oil usage, rather than the extended oil life savings promised by Products. This testimony was corroborated by employees of Dixon, and it was also averred that the Esplanade Street machine started leaking oil after the first month of use, requiring a new gasket.
Regarding the Hessmer Street fryer, an employee at that location testified that within two or three weeks of installation a crack in one of the heating elements was discovered. The sales and service manager for Products, David M. Hope, pinpointed the time he learned of problems beginning with the New Orleans fryers as "about a week or so" after he returned from a demonstration of the equipment to Dixon employees.
*861 An Esplanade Street employee also testified that the machine did not filter properly and that approximately four or five times it had shut down and then had started back up later for no apparent reason. In October there was a problem with the pump, and on December 22, 1976, the fryer at that location ceased to operate and was replaced.
Regarding the Hessmer Street fryer, there was also testimony that it did not filter properly, and there was a problem getting the bottom pan off to put in a filter, requiring a great deal of force, and that the filters required changing twice a day. The fryer was finally taken out of operation on October 15, 1976.
There was a service agreement executed between Products and Pittman Stove Works at Dixon's request; however, there was evidence there were delays in servicing either through inability to make the required repairs or other internal problems at Pittman. There was also evidence of extended delays in acquiring replacement parts.
In his reasons for judgment given from the bench, the trial judge said:
"Well, the court is of the opinion that the law is clear: That in an action of redhibition, it's only necessary to show that the article purchased, sold, was not fit for the purpose for which it was intended.
"The Court is satisfied that there is a preponderance of the evidence in these proceedings to show that the two Puro-fryers were unfit for the purpose for which they were intended, and that they did not function as it was represented that they would function.
"As an illustration, only, because there is substantial other evidence, but to say that a fryer purchased by a restaurant can be out of function, out of use, for a month and a half, waiting for one part, and then in another instance, waiting for another month and a half for another machine for another part, is simple and ample proof, in my opinion, of the fact that the equipment was defective.
"There were hidden vices in it that would make it unfit for the purpose of which it was intended."
We agree.
In the case of Rey v. Cuccia, 298 So.2d 840, 842-843 (La.1974), the Supreme Court, regarding actions in redhibition, stated:
"A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold `which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice.' Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La. 1973).
"The buyer must prove that the defect existed before the sale was made to him. Article 2530. However, if he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App. 4th Cir. 1968); Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3d Cir. 1961).
* * * * * *
"If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries *862 v. Nelson, 46 So.2d 333 (La.App. 1st Cir. 1950); Standard Motor Car Co. v. St. Amant, 134 So. 279 (La.App. 1st Cir. 1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971)."
As in Rey, supra, the plaintiff in the present case had the burden of proving that a redhibitory defect existed at the time of the sale. The record establishes that within a short period of time after installation severe problems began to arise without these problems being remedied through service.
Neither do we find any difficulty upholding the trial court in declaring Products and Loubat liable in solido to Dixon. As the court also declared in Rey, supra, at page 845:
"When the sale is annulled for a redhibitory defect resulting from the original manufacture, the purchaser can recover the pecuniary loss resulting from the unusable thing sold from the manufacturer as well as the seller. Media Productions Consultant v. Mercedes-Benz of N. A., Inc., cited above. As there stated, 262 La. 80, 262 So.2d 377: `Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty.' * * *"
However, although the district judge did not give reasons for his denial of Loubat's third party demand against Products, we can find no justification in the record for this part of the judgment. According to the record a service part was at one point sent to Loubat and there is some evidence that the delay in getting it to Dixon and Pittman could have been diminished considerably with Loubat's assistance. However, Hope admitted that the part was sent by mistake to Loubat instead of to Pittman and that it was not Loubat's responsibility to deliver a service part.
LSA-C.C. 2531 states:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
We hold, moreover, that the present case is similar to the factual situation in Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3d Cir. 1979), where a plaintiff made a redhibitory claim against the Alexandria Coca-Cola Bottling Company, Ltd, as manufacturer of a defective bottle of Coke and A & P as the seller. The court found that A & P did not know of the vice at the time of the sale and held both defendants liable in solido for return of the purchase price. In considering A & P's third party demand against Alexandria, however, the court held at page 212, citing Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir. 1973):
"A & P raises the contention that, if it is responsible to Mrs. Reeves for return of the purchase price, it is entitled to recovery of this amount against the Alexandria Coca-Cola Bottling Company, Ltd. Pursuant to this end, it made a third party demand at the trial level; however, the trial judge failed to rule on this demand. A & P is entitled to judgment on their third party demand against the bottling company. * * *"
*863 This rationale was similarly followed in the case of Breaux, supra, where the court held both the seller, Quality Mobile Homes, Inc., and the manufacturer, Winnebago Industries, Inc., liable in solido to the buyer in an action in redhibition and also held, regarding the third party demand of the seller against the manufacturer, at page 770:
"Quality has third partied Winnebago for indemnity in the event the sale is rescinded. We grant Quality indemnity since they are only vicariously responsible for the defects which were obviously present when delivered by the manufacturer. Appalachian Corporation, Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922)."
Accordingly, this court will grant Loubat's third party demand against Products for reimbursement of any amount Loubat would be required to pay the plaintiff.
In regard to the plaintiff's request for attorney fees for prosecution of the case on the trial court and on the appellate levels, a review of the record indicates that no attorney fees were prayed for in the plaintiff's petition. In this regard we refer to the case of Davis v. Aetna Casualty & Surety Company, 329 So.2d 868 (La.App.2d Cir. 1975), where the court said at page 876:
"The remaining issue is whether we may award plaintiff attorney fees of $5000 when he only prayed for $2500 in attorney fees in the event the case was appealed.
"Defendants contend a party may not be awarded more attorney fees than he prayed for in his petition. Plaintiff argues that Code of Civil Procedure Articles 862 and 2164 vest this court with the power to award attorney fees in an amount it finds to be proper and just regardless of the amount he prayed for in his petition.
"We disagree with plaintiff's interpretation of these articles of the Code of Civil Procedure. These articles are not controlling in the area of special damages. Article 861 provides items of special damage must be specifically alleged. In this case there was no evidence offered on the amount of attorney fees and, therefore, by the clear and unambiguous language of C.C.P. Art. 861, plaintiff may not recover more attorney fees than he alleged to be due, i. e., $2500."
Moreover, it is an established rule that evidence of the value of an attorney's services is not necessary where the services are rendered under the supervision of the court. Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4th Cir. 1977), and Clinkscales v. Superior Pontiac GMC, Inc., 365 So.2d 895 (La.App. 4th Cir. 1978).
Furthermore, this court addressed itself to that issue in Boudreaux, supra, at page 506:
"Finally, on authority of C.C. 2545 (as amended, Acts 1968 No. 84), we grant plaintiff's request for attorney's fees for the appeal alone. C.C.P. 862 provides that `a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.' And C.C.P. 2164 provides that `[t]he appellate court shall render any judgment which is just, legal and proper upon the record on appeal.' We have increased attorney's fees awarded by the trial court to recompense for additional services on appeal in Dunlap v. Chrysler Mtrs. Corp., La.App. 4 Cir. 1974, 299 So.2d 495. We now implement C.C. 2545 for attorney's fees for the appeal by itself, although attorney's fees were not prayed for (except in brief) or awarded in the trial court. We award $500 for representation on the appeal alone."
It is also a well-established rule of jurisprudence in Louisiana that a manufacturer is presumed to know the vices of the thing he sells and actual knowledge is not required. Moreover, LSA-C.C. art. 2545 provides for an award of attorney fees in a redhibitory action if the seller knows the vice of the thing he sells and omits to declare it.
*864 There was no evidence that Loubat knew of the vices in the Purofryer Systems. Accordingly, we will cast Products alone in judgment for attorney fees for prosecution of the plaintiff's case on the appeal alone, and set the fee for $750 on the theory that this amount is reasonable under all the circumstances. Clinkscales, supra.
For the reasons assigned the decision appealed from denying the third party claim of Loubat Glassware & Cork Company, Ltd., is reversed and judgment is granted in favor of Loubat Glassware & Cork Company, Ltd., and against Restaurant Products, Inc., third party defendant, for the damages incurred by Loubat as a result of the principal demand by Dixon Enterprises, Inc., and for all costs of these proceedings. The district court judgment is also amended to grant plaintiff the additional sum of $750 against defendant Restaurant Products, Inc., as a reasonable attorney fee in prosecution of the case on appeal. As thus amended, and in all other respects, the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED IN PART.