400 So.2d 322 (1981)
Betty Jean LOKEY, wife of/and Ernest F. Lokey
v.
DIXIE BUICK, INC., and Holiday Rambler Corporation.
No. 11975.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
Rehearing Denied July 13, 1981.
*324 Kronlage, Dittmann & Caswell, Charles A. Kronlage, Jr., New Orleans, for plaintiffs-appellees.
John David Cassanova, Metairie, for Dixie Buick, Inc., defendant-appellant-appellee.
Robert H. Fray, Gretna, for Holiday Rambler Corp., defendant-appellant-appellee.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
CHEHARDY, Judge.
Defendants, Dixie Buick, Inc. (Dixie), and Holiday Rambler Corporation (Holiday), appeal a district court decision in favor of plaintiffs, Betty Jean Lokey, wife of/and Ernest F. Lokey, and against the defendants jointly, severally and in solido in the full sum of $18,294.70 with legal interest thereon from date of judicial demand and for all costs of the proceedings. The judgment further decreed that:
"* * * there be judgment herein, in favor of Dixie Buick, Inc., and against Holiday Rambler Corporation, in the full sum of Two Thousand Nine Hundred Twenty-seven and 15/100 Dollars ($2,927.15), representing twenty percent (20%) of the total amount of judgment for which Dixie Buick, Inc., has been cast in judgment in the main demand, with legal interest thereon from date of judicial demand;
"* * * there be judgment herein in favor of Holiday Rambler Corporation and against Dixie Buick, Inc., in the full sum of Fourteen Thousand Six Hundred Thirty-five and 76/100 Dollars ($14,635.76), representing eighty percent (80%) of the total amount for which Holiday Rambler Corporation has been cast in judgment in the main demand, with legal interest thereon from date of judicial demand;
"* * * as relates to the respective third-party demands by and against Dixie Buick, Inc., and Holiday Rambler Corporation, that each of the parties bear their respective costs."
In a later judgment on the plaintiffs' claim for attorney fees, the petitioners' request for such was denied, the court being of the opinion such a request should have been included in the pleadings and submitted to the jury for its consideration. Consequently, plaintiffs have answered the defendants' appeal asking that only that part of the judgment refusing to grant the plaintiffs attorney fees be reversed.
Plaintiffs also have appealed a subsequent judgment of the trial court in favor of Holiday and against the plaintiffs and Dixie, ordering that the 1978 "Free Spirit 26' Motor Home," which is the subject of this lawsuit, be sold at public sale to the last and highest bidder for cash, with appraisal, and after due legal advertisement.
The jury's answers to interrogatories stated the plaintiffs' claim should be paid in the proportions of Dixie 80% and Holiday 20%.
On June 8, 1978, plaintiffs purchased a 1978 Free Spirit 26' Motor Home, manufactured by Holiday, from Dixie for the price of $17,544.70. Mrs. Lokey testified that the reason for buying the vehicle was she and her family like to travel but they did not care to stop at motels. They wanted to be "self-contained" so as to eat, sleep and live together in comfort.
Mrs. Lokey said that on the day before the purchase she rode around the block in the vehicle and was informed by the salesman that after the purchase of the vehicle she should read the accompanying booklets to figure out what was supposed to be done in operating it. She added that on the night of the sale her husband drove the motor home from Dixie and on the way home the engine would die every time they stopped; the air conditioner generator would not function and was making a loud noise; and there was some problem with the steering.
Mrs. Lokey also stated she returned to Dixie on the day after the purchase with a list of problems which had evidenced themselves and which included, in her words:

*325 "The wood was loose on the side of the door. That was the door frame. The butane gas valve was broken. The front speaker didn't work. There was no toilet paper holder. The opening door hit the air conditioner. The toilet wouldn't flush. The shower wouldn't work. The right headlight was out. The generator wouldn't start properly or function properly. There was no TV lead in wire for the TV hookup. The holding tank hose was missing, the water hose was missing, the lock, we couldn't lock the dead bolt. There was no level for the refrigerator. The car died every time you stopped. The motor air conditioner didn't cool. The gas gasoline pipe was loose. It was hard to steer. There was some sort of leak when you turned the corner to the left, it appeared to be water. The exhaust. This is the generator again but the little bit of time it would work it would make a tremendous noise and shoot out some sort of brown water. The antenna, the TV antenna wouldn't rotate and there was a burning, a rubber burning smell coming from the engine."
She stated Dixie was unable to repair the air conditioner and refrigerator but suggested she bring the vehicle back to them on Tuesday, June 13. She added she went ahead and made the trip she had planned from Kentwood to Colleen, Louisiana, and she experienced a vibration problem with the steering; she was unable to get the generator to work for more than two or three minutes at a time, necessitating that she move the vehicle to a camp in order to plug into electricity; and she and her children had no bathroom facilities or refrigerator working in the vehicle during the trip.
Mrs. Lokey said she brought the vehicle back to Dixie on June 13 and picked it up on Friday, June 16. Although Dixie had repaired some of the items on the list she had given them, the door to the bathroom still scraped the air conditioner, the right headlight was still not working, the generator did not function, the television antenna did not rotate, the pipe to empty the sewerage tank was not provided nor was the water tank hose, the air conditioning was still not functioning, the gauges on the tanks had not been fixed nor was the refrigerator repaired. She said she and her family took the motor home to a campground anyway that weekend, but they were only able to stay one night because of the difficulties with the vehicle.
Mrs. Lokey testified she again left the motor home at Dixie for repairs from Tuesday, June 20, to Friday, June 23, and also brought it back to them on Monday, June 26, but they were unable to even repair the refrigerator. She said she then called the manufacturer of the refrigerator, who referred her to a place called "Barrows"; however, she was told by Mr. Barrows that due to the fact the vehicle was bought from Dixie he did not plan to work on it and asked her to leave his premises.
Subsequently, on June 29, Mrs. Lokey and her family left on another trip and located a place in San Antonio, Texas, which offered to repair the refrigerator; however, when she called Dixie they would not "okay" the repair work but told her they would get the part and repair it when she returned. However, when she went back to Dixie the dealership had changed hands and it was then called "Eagle," which establishment did not have the part nor did it offer to repair the refrigerator. She added that on the way home from the trip to Texas the entire exhaust fell off the generator.
Mrs. Lokey said Eagle was also unable to repair most of the problems with the motor home and on another trip in the vehicle a tire blew out; the lug wrench did not fit the lugs on the tire; the spare tire had no air in it and had a small leak; the generator was still not working and they had to stay in motels and campgrounds where they could plug into electricity practically every night of the trip. She said there was trouble with the headlights dimming, a wire dropped out from the generator, and several fan belts in the motor broke and had to be replaced.
Upon returning from this trip Mrs. Lokey, who had been to either Dixie or Eagle seven times previously made one more attempt *326 to get satisfaction from Eagle but was told they felt they had done all they should do for someone who didn't buy the vehicle from them. Upon contacting Holiday, Mrs. Lokey was told that she could drive the motor home to either Indiana or Texas for repair. She, however, stated this was impossible to do since the generator muffler had fallen off. It was also suggested that she take it back to Barrows, but she did not care to do this because he had previously invited her off of his lot.
The Lokeys left the motor home for the next year at their country home in Kentwood, Louisiana; and the plaintiffs were not contacted by a Holiday representative until May of 1979. This employee of Holiday, Albert Pettengill, testified at trial that he inspected the vehicle at that time and he confirmed most of Mrs. Lokey's problems with it. He did say, however, the problems could have been remedied through a dealer, although he did not inspect the generator because, according to his testimony, there was not enough gas in it to get it started.
The law and jurisprudence surrounding an action in redhibition was discussed by this court in the similar case of Dixon Enterprises v. Restaurant Products, 389 So.2d 859 (La.App. 4th Cir. 1980), wherein we noted at 861-862:
"In the case of Rey v. Cuccia, 298 So.2d 840, 842-843 (La.1974), the Supreme Court, regarding actions in redhibition, stated:
`A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold "which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice." Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973).
`The buyer must prove that the defect existed before the sale was made to him. Article 2530. However, if he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App. 4th Cir.1968); Fisher v. City Sales and Service, 128 So.2d 790 (La. App.3d Cir.1961).
* * * * * *
`If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries v. Nelson, 46 So.2d 333 (La.App. 1st Cir.1950); Standard Motor Car Co. v. St. Amant, [18 La.App. 298,] 134 So. 279 (1st Cir.1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971).'"
In the present case the large number of defects in the motor home evidenced themselves immediately after the sale, and the plaintiffs were unable to have them repaired in spite of repeated efforts on their part to have Dixie remedy the problems. It is obvious, therefore, the plaintiffs carried their burden of proving redhibitory defects existed at the time of the sale and under our present law, they are entitled to annul the sale and recover their purchase price.
*327 Also, in regard to the issue of tender, which is required by our jurisprudence before a sale can be rescinded, formal tender is not required when the vendor has indicated one would be useless White v. Martin GMC Trucks, Inc., 359 So.2d 1094 (La.App.3d Cir.1978). Certainly the facts presented justified the jury's concluding that formal tender would have been useless, and, therefore, not required in the present suit.
Furthermore we find no error in the finding that the seller and the manufacturer are liable in solido to the plaintiffs. As was said in Rey v. Cuccia, 298 So.2d 840, 845 (La.1974):
"When the sale is annulled for redhibitory defect resulting from the original manufacture, the purchaser can recover the pecuniary loss resulting from the unusable thing sold from the manufacturer as well as the seller. Media Productions Consultant v. Mercedes Benz of N. A., Inc., cited above. As there stated, 262 La. 80, 262 So.2d 377: `Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty.' * * *"
In Dixon Enterprises, supra, this court also reversed part of the trial court judgment and allowed the seller to recover the damages for which he was cast from the manufacturer. However, in that case it was held the seller did not contribute to the plaintiff's problems with the subject machinery due to the fact the seller was not itself in charge of servicing the machine or responsible for the delivery of service parts. In that case this court noted LSA-C.C. art. 2531, which states:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
In Dixon Enterprises, additionally, this court stated:
"We hold, moreover, that the present case is similar to the factual situation in Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App.3d Cir.1979), where a plaintiff made a redhibitory claim against the Alexandria Coca-Cola Bottling Company, Ltd., as manufacturer of a defective bottle of Coke and A & P as the seller. The court found that A & P did not know of the vice at the time of the sale and held both defendants liable in solido for return of the purchase price. In considering A & P's third party demand against Alexandria, however, the court held at page 212, citing Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir.1973):
`A & P raises the contention that, if it is responsible to Mrs. Reeves for return of the purchase price, it is entitled to recovery of this amount against the Alexandria Coca-Cola Bottling Company, Ltd. Pursuant to this end, it made a third party demand at the trial level; however, the trial judge failed to rule on this demand. A & P is entitled to judgment on their third party demand against the bottling company. * * *'
This rationale was similarly followed in the case of Breaux, supra, where the court held both the seller, Quality Mobile Homes, Inc., and the manufacturer, Winnebago Industries, Inc., liable in solido to the buyer in an action in redhibition and also held, regarding the third party demand *328 of the seller against the manufacturer, at page 770:
`Quality has third partied Winnebago for indemnity in the event the sale is rescinded. We grant Quality indemnity since they are only vicariously responsible for the defects which were obviously present when delivered by the manufacturer. Appalachian Corporation, Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922).'" 389 So.2d at 862-863.
In the present case many of the defects in the motor home, although not all of them, were of the kind that could have been remedied by Dixie, which was responsible for servicing the vehicle. Some of the other problems with the motor home, however, such as the defective refrigerator and the generator, were obviously the responsibility of the manufacturer, Holiday, to replace or repair. The jury's appraisal of the liability involved, therefore (80% Dixie, 20% Holiday), was correct; however, because the parties were correctly cast in judgment in solido for the entire cost of the motor home plus damages, and such judgment had not yet been executed, the award of specific money damages as between the two defendants was inappropriate. In following the directives of the jury, therefore, this court will cast Holiday in judgment for 20% of any damages that Dixie may have to pay upon execution of the judgment in favor of the plaintiffs, and we will cast Dixie in judgment for 80% of any damages Holiday is required to pay upon execution of the judgment in favor of the plaintiffs.
Addressing ourselves to the plaintiffs' request for attorney fees, this court also refers to the law articulated in Dixon Enterprises, supra, where, as in the present case, attorney fees were not prayed for in the plaintiff's petition. Accordingly, this court said:
"In regard to the plaintiff's request for attorney fees for prosecution of the case on the trial court and on the appellate levels, a review of the record indicates that no attorney fees were prayed for in the plaintiff's petition. In this regard we refer to the case of Davis v. Aetna Casualty & Surety Company, 329 So.2d 868 (La.App.2d Cir. 1975), where the court said at page 876:
'The remaining issue is whether we may award plaintiff attorney fees of $5000 when he only prayed for $2500 in attorney fees in the event the case was appealed.
`Defendants contend a party may not be awarded more attorney fees than he prayed for in his petition. Plaintiff argues that Code of Civil Procedure Articles 862 and 2164 vest this court with the power to award attorney fees in an amount it finds to be proper and just regardless of the amount he prayed for in his petition.
`We disagree with plaintiff's interpretation of these articles of the Code of Civil Procedure. These articles are not controlling in the area of special damages. Article 861 provides items of special damage must be specifically alleged. In this case there was no evidence offered on the amount of attorney fees and, therefore, by the clear and unambiguous language of C.C.P. Art. 861, plaintiff may not recover more attorney fees than he alleged to be due, i. e., $2500.'
"Moreover, it is an established rule that evidence of the value of an attorney's services is not necessary where the services are rendered under the supervision of the court. Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4th Cir.1977), and Clinkscales v. Superior Pontiac-GMC, Inc., 365 So.2d 895 (La. App. 4th Cir.1978).
"Furthermore, this court addressed itself to that issue in Boudreaux, supra, at page 506:
`Finally, on authority of C.C. 2545 (as amended, Acts 1968 No. 84), we grant plaintiff's request for attorney's fees for the appeal alone. C.C.P. 862 provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded *329 such relief in his pleadings and the latter contain no prayer for general and equitable relief." And C.C.P. 2164 provides that "[t]he appellate court shall render any judgment which is just, legal and proper upon the record on appeal." We have increased attorney's fees awarded by the trial court to recompense for additional services on appeal in Dunlap v. Chrysler Mtrs. Corp., La.App. 4 Cir. 1974, 299 So.2d 495. We now implement C.C. 2545 for attorney's fees for the appeal by itself, although attorney's fees were not prayed for (except in brief) or awarded in the trial court. We award $500 for representation on the appeal alone.'
"It is also a well-established rule of jurisprudence in Louisiana that a manufacturer is presumed to know the vices of the thing he sells and actual knowledge is not required. Moreover, LSA-C.C. art. 2545 provides for an award of attorney fees in redhibitory action if the seller knows the vice of the thing he sells and omits to declare it.
"There was no evidence that Loubat knew of the vices in the Purofryer Systems. Accordingly, we will cast Products alone in judgment for attorney fees for prosecution of the plaintiff's case on the appeal alone, and set the fee for $750 on the theory that this amount is reasonable under all the circumstances. Clinkscales, supra." 389 So.2d 863-864.
In the present case, therefore, this court will deny the plaintiff's request for attorney fees for services rendered at the district court level; however, since there was no clear evidence allowing the factual conclusion that the defendant Dixie had actual knowledge of the defects existing in the motor home at the time of the sale, but Holiday, because it was the manufacturer of the vehicle, is presumed, by law, to know the defects, we will cast Holiday alone in judgment for attorney fees for prosecution of the plaintiffs' case on only the appeal, and we set $1,000 as a reasonable fee.
In regard to the district judge's July 29, 1980 order for the motor home to be sold at public sale, this court also holds that such decree was in error due to the fact both Dixie and Holiday had been granted a suspensive appeal from the district court judgment in favor of the plaintiffs on June 3, 1980 and returnable to this Court of Appeal on August 1, 1980, rendering the plaintiffs unable to execute that part of the judgment awarding them a sum of money for rescission of the sale.
For the reasons assigned, therefore, that part of the district court judgment granting each of the defendants specific monetary damages from the other is hereby reversed and this court orders that Dixie Buick, Inc., be cast in judgment for 80% of any damages that Holiday Rambler Corporation is required to pay the plaintiffs upon execution of the judgment in their favor; this court, accordingly, also orders that Holiday Rambler Corporation is cast in judgment for 20% of any damages Dixie Buick, Inc., is required to pay the plaintiffs upon execution of the judgment in their favor. The decision of the district court ordering the sale of the subject motor home is also reversed and the motion of Holiday Rambler Corporation petitioning the trial court for such sale is denied. Additionally, the district court judgment is amended to grant plaintiffs the sum of $1,000 against defendant Holiday Rambler Corporation as a reasonable fee in prosecution of the case on appeal. As thus amended, and in all other respects, the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED IN PART.